IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA.
FILED
MAY 1 1 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 4:04CR70083 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| LANNY BENJAMIN BODKINS ) | By: Hon. Glen E. Conrad |
| ANTHOINE PLUNKETT ) | United States District Judge |
| ) | |
| Defendants. ) | |

The parties have filed the following motions in this case: (1) motion to set deadlines for the filing of pretrial motions filed by the Government; (2) motion for regulation of discovery filed by defendant Plunkett; (3) motion to unseal previously filed <u>ex parte</u> motions, applications and pleadings and to prohibit further <u>ex parte</u> filings without notice to the Government filed by the Government; (4) motion to bar tokens/insignia filed by both defendants Lanny Benjamin Bodkins ("Bodkins") and Anthoine Plunkett ("Plunkett"); and (5) motion in limine - penalty phase filed by defendant Plunkett. The court held a hearing on these outstanding motions on May 6, 2005.

I.  Motion to Set Deadlines for the Filing of Pretrial Motions and Motion for Regulation of Discovery

The government's motion requests the court to set a deadline for the parties to file any pretrial motions. The parties have agreed to June 20, 2005 as the cutoff date for the filing of pretrial motions, with 14 days for responses, and no later motions without a showing of good cause. Beverly Davis, counsel for defendant Plunkett, will submit a proposed order to the court to reflect this agreed date.

With regard to the motion for regulation of discovery, defendant Plunkett contends that the Rule 16(a) discovery provided by the Government appears to be incomplete and requests the court to set dates certain on which all discovery should be provided. At the hearing, the parties agreed upon July 8, 2005 as a reciprocal deadline by which all discovery shall be submitted. Beverly Davis will include a provision in his proposed order regarding this date as well.

II.  Motion to Unseal Previously Filed Ex Parte Motions, Applications and Pleadings and to Prohibit Further Ex Parte Filings Without Notice to the Government

The Government was apparently copied on a letter from Roger Groot, counsel for defendant Plunkett, relating to the ex parte appointment of a "victim outreach expert." In its motion, the Government requests that the appointment of the victim outreach expert be rescinded, that all prior ex parte filings by the defense (except those related to attorneys' fees) be unsealed, that the Government have the opportunity to object to any action requested in those filings, and that the Government be given general notice of the subject matter of any future ex parte filings.

The court notes that defense counsel may properly make ex parte requests for investigative, expert, or other services when they are reasonably necessary for the representation of a capital defendant and the defendant makes a proper showing of the need for confidentiality. 21 U.S.C. § 848(q)(9). The Government does not contend that defense counsel may not make ex parte application for expert services, but expresses its concerns regarding the proper standard for a showing of confidentiality under the statute.

The court agrees that the Government's concerns are legitimate, but that it is difficult to balance these concerns with the defendants' interests, including their interest in maintaining the

2

Case 4:04-cr-70083-GEC    Document 260    Filed 05/11/05    Page 2 of 17    Pageid#: 718

confidentiality of their trial strategies. The approval of all investigate, expert or other services has been referred to Magistrate Judge Urbanski, pursuant to 28 U.S.C. § 636(b). In order to permit the court to determine whether ex parte expert appointments have been made within the statutory framework, the court will order Magistrate Judge Urbanski to prepare a report for the court to include, either in general, by individual witness, or by categories of witnesses, the reason for confidentiality in ruling on the approval of appointment of expert witnesses. If, after review of that report, any party has any remaining concerns, they may appeal the Magistrate Judge's ruling to this court. In all other respects, the court will deny the Government's motion.

III.  Defendants' Motions to Bar Tokens/Insignia

Defendants Plunkett and Bodkins have filed identical motions requesting the court to bar from the courtroom during trial any person wearing tokens or insignia implying support for the victim or the government, or, in the case of government prosecutors, tokens or insignia that might distract the jury or imply that the prosecution is morally superior to defense counsel or the defendants. The defendants contend that permitting such tokens or insignia would deprive them of their rights to confrontation and an impartial jury under the Sixth Amendment and of their due process rights to a fair trial under the Fifth Amendment.

The failure to ensure a fair trial is a violation of the standards of due process. Irvin v. Dowd, 366 U.S. 717, 722 (1961). The right to a fair trial is also guaranteed by the Sixth Amendment and includes "the principle that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.'" Holbrook v. Flynn, 475 U.S. 560, 567 (1986) (quoting Taylor v. Kentucky,

3

436 U.S. 478, 584 (1978)). In Holbrook, the Supreme Court examined the right to a fair trial in the context of a situation where several uniformed police officers had attended the trial of the defendants. In such situations, the Court concluded that federal courts must "look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." 475 U.S. at 572. See also, Hill v. Ozmint, 339 F.3d 187, 199 (4th Cir. 2003).

Courts have extended this holding to cases involving spectators as well as uniformed police officers in the courtroom. In Woods v. Dugger, 923 F.2d 1454, 1460 (11th Cir. 1991), the Court held that the presence of a substantial number of uniformed correctional officers present in court during a trial for the murder of a correctional officer by prison inmates was inherently prejudicial. The Court also noted that the defendant could succeed by showing either actual or inherent prejudice. 923 F.2d at 1457. To show inherent prejudice, a defendant must show that there was an unacceptable risk that impermissible factors could come into play. Id.

In Norris v. Risley, 878 F.2d 1178 (9th Cir. 1989), the Court examined a rape trial during which spectators in the courtroom included twenty to twenty-five women from a Rape Task Force who were wearing buttons stating "Women Against Rape." The Court noted that the presence of the women wearing these buttons may have posed a risk of influencing the jury and remanded the case back to the lower court to consider factors such as "the number of women, the visibility of the buttons, whether the jurors passed through the women as they entered and exited the courtroom, and whether the women were serving refreshments in view of the jurors, thus giving the apparent imprimatur of the state to the women's presence." 878 F.2d at 1183. The

4

Court also held that if there was a serious and imminent risk to a fair trial, the right to a fair trial would outweigh any of the women's First Amendment rights at stake. Id. at 1180-81.

The court agrees with the defendants' assertion that establishing general rules in advance of trial should help to reduce the risk of any inherent or actual prejudice that might result from the use of tokens or insignia during the trial. Therefore, in order to protect the defendants' right to a fair trial, the court holds that participants and spectators will be prohibited from wearing or displaying any case specific items of any sort, reflecting support for either side. With regard to the death penalty aspect of this case, the court holds that participants and spectators will be prohibited from wearing or displaying any item that is clearly issue specific, including articles or clothing with messages relating to the death penalty. The court declines to issue any prohibition with regard to tokens or insignia that do not fall into such case specific or issue specific categories. Furthermore, with regard to any insignia that attorneys for either side might choose to wear or display, the court expects that all the attorneys involved in this case will act responsibly, but it will take up any issues that arise in this regard on a case by case basis during the trial.

IV.     Defendant Plunkett's Motion in Limine - Penalty Phase

Defendant Plunkett's omnibus motion addresses three broad areas: issues of evidence and argumentation; bifurcating the penalty phase; and instruction issues. He raises several different issues in each area which the court will address below.

A.      **Issues of Evidence and Argumentation**

1.      "Send a Message" arguments

Plunkett contends that, because his sentence should be based solely upon the jury's decisions about and weighing of aggravating and mitigating evidence, see 18 U.S.C. § 3593(c)-

5

(e), the court should bar prosecutors from making any form of general deterrence argumentation, including any "send a message" arguments. Argumentation that includes an appeal to the jury "to act as the community conscience" is not per se unreasonable, unless it is "calculated to incite the passions and prejudices of the jurors." United States v. Solivan, 937 F.2d 1146, 1151 (6th Cir. 1991). In determining whether a particular argument or statement is intended to inflame the jury, courts consider "whether the statements appeal to community interests in light of current events and the nature of the specific case." Id. at 1153. Statements that are "mere innocuous reference[s] to the community or societal need to convict guilty people" are generally permissible. Id. at 1155. See also, Washington v. United States, 291 F. Supp. 2d 418, 440 (W.D. Va. 2003) (holding that "prosecutors may ask jurors to act as the 'conscience of the community' as long as the comments are not intended to inflame the passions of the jury"). But prosecution statements regarding general community values, the preservation of civil order or that advocate deterrence of future lawbreaking are generally impermissible. United States v. Davis, 177 F. Supp. 2d 470, 478 (E.D. Va. 2001).

The court agrees that general deterrence arguments are not usually permissible in the context of sentencing. Nevertheless, some forms of deterrence arguments are permissible, even in a capital case, and the court declines to issue a blanket prohibition regarding these deterrence arguments generally. Should the Government make an inappropriate deterrence argument during the sentencing hearing, if such a proceeding should be necessary, the court will entertain objections from the defendants at that time.

2. Penalty phase hearsay

Although Plunkett concedes that 18 U.S.C. § 3593(c) permits the government to use

6

Case 4:04-cr-70083-GEC    Document 260    Filed 05/11/05    Page 6 of 17    Pageid#: 722

information during the penalty phase "regardless of its admissibility under the rules governing admission of evidence at criminal trials," he argues that permitting the use of certain hearsay evidence would be in violation of his rights under the Confrontation Clause of the Sixth Amendment. In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause mandates that testimonial statements made by witnesses out of court are inadmissible at a criminal trial unless the witness is unavailable and the defendant had the prior opportunity to cross-examine the witness. Though not specifically addressed by the Supreme Court, Plunkett would carry this holding over to the context of the penalty phase of a criminal trial.

The United States Court of Appeals for the Fourth Circuit has not addressed the application of Crawford to the penalty phase of a criminal prosecution. The United States Court of Appeals for the Second Circuit has noted, however, that 18 U.S.C. § 3593(c) "does not eliminate this function of the judge as gatekeeper of constitutionally permissible evidence." United States v. Fell, 360 F.3d 135, 145 (2nd Cir. 2004). Noting the pre-Crawford holding in Fell, one district court in the Eastern District of Virginia has held that Crawford does restrict the admission of hearsay evidence in the penalty phase of a capital criminal prosecution, at least with regard to the eligibility phase of those proceedings. United States v. Jordan, 357 F. Supp. 2d 889 (E.D. Va. 2005).

In Jordan, the Court noted that "[t]he finality of the death penalty requires a 'greater degree of reliability' when it is imposed." 357 F. Supp. 2d at 901 (citing Murray v. Giarratano, 492 U.S. 1, 8-9 (1989)). The Court observed that, to achieve that end, courts typically admit "more evidence, not less, on the presence or absence of aggravating and mitigating factors." Id.

7

at 901. These concerns must be balanced, however, with the constitutional protections set forth in Crawford. Id. The Court emphasized that "[f]rom a constitutional perspective, the eligibility phase is the most critical because it is a necessary prerequisite to the jury's consideration of the death penalty." Id. at 902. Thus, the Court concluded that the Confrontation Clause, as interpreted by Crawford, is applicable to at least some portion of the penalty phase as well as the guilt phase of a capital trial. Id. at 903. The Court went on to note, however, that "[u]nlike the eligibility phase, the selection phase is intended to be less structured and less encumbered by strict adherence to the Rules of Evidence." Id. Thus, if the prosecution intended to offer information that would be inadmissible during the eligibility phase but would be permitted during the selection phase, the proper course could be for the court to bifurcate the penalty proceeding and permit such evidence to be offered during the selection phase alone. Id. at 903-04. No court has held that Crawford applies to the entire penalty proceeding, however. See also, United States v. Gray, ___ F. Supp. 2d ___, 2005 WL 613645, *9 (S.D.W. Va. 2005) (holding, in a non-capital case, that Crawford is premised upon the context of a trial and that it does not apply to a sentencing proceeding).

As discussed section IV.B., infra, the court has determined that, if the defendants are convicted of one or more death eligible offenses, the subsequent sentencing proceeding will be bifurcated into an eligibility phase followed by a selection phase. Thus, as the Jordan court noted, any testimonial hearsay evidence offered during the eligibility phase would have to meet the requirements of Crawford before it could be presented to the jury. Those same requirements would not apply to hearsay evidence, testimonial or non-testimonial, offered during the selection phase.

8

3.  Pleas for death

Plunkett presumes that the government intends to call victim impact witnesses and requests the court to rule in advance of trial that such witnesses cannot make pleas of death. Because the government has responded that it intends to instruct its witnesses that they are to refrain from asking the jury to impose the death penalty on any defendant, the court finds that this request is moot.

4.  Future dangerousness arguments

Plunkett notes that the government has alleged future dangerousness as a non-statutory aggravator. He then argues that, because the only punishment options, should he be convicted, are death or life with no possibility of parole, any future dangerousness would be only in the context of the prison environment. Plunkett requests that the court bar the government from arguing that he will be a future danger in the prison context unless it is able to produce specific evidence regarding his predicted post-sentencing conduct while incarcerated. Plunkett contends that permitting any future dangerousness argument without such evidence would be an argument outside the record that should not be permitted. See Henry v. State, 278 Ga. 617, 619-20 (2004).

First, the court notes that Count Five of the superseding indictment, which includes the 18 U.S.C. § 924(j) charge, carries the possibility of imprisonment for a term less than life. The statute provides that if the killing is a murder, a person convicted under that statute shall be punished by death or by imprisonment for any term of years or for life. 18 U.S.C. § 924(j)(1). Murder is defined in 18 U.S.C. § 1111, which also provides that a person convicted of first degree murder shall be punished by death or imprisonment for life, while a person convicted of second degree murder shall be punished for any term of years or for life. 18 U.S.C. § 1111(b).

9

Count Five charges the defendants with first degree murder, however should the evidence warrant it, due process would require the court to give an instruction on the lesser included offense of second degree murder. See Bates v. Lee, 308 F.3d 411, 418 (4th Cir. 2002). If the jury convicted either defendant of only second degree murder, there is a possibility that the defendant(s) would eventually be released from prison with regard to that charge.

Furthermore, the potential for future dangerousness solely in the prison context is relevant at sentencing. See United States v. Johnson, 223 F.3d 665 (7th Cir. 2000); United States v. Bernard, 299 F.3d 467, 482 (5th Cir. 2002). Therefore, arguments for future dangerousness, even in the prison context, should not be limited to evidence of dangerousness or bad conduct during past periods of incarceration. In this case, however, it is premature for the court to make a final ruling prior to completion of the guilt phase of the trial. In addition, there has been no representation regarding the particular evidence the Government intends to introduce with regard to future dangerousness. The parties remain free to make any objection during the penalty phase, should it become necessary. In the meantime, the court will take this request under advisement.

5.  Absence of remorse

Plunkett notes that the government has alleged absence of remorse as an aggravating factor. The defendant contends that in the absence of any direct evidence of a lack of remorse, the government should not be permitted to argue that he has not demonstrated remorse because such an argument would be a comment on his failure to testify at trial, which would be barred by the Self-Incrimination Clause of the Fifth Amendment. See Crooker v. California, 380 U.S. 609 (1965). Because the government has responded that it will not rely upon the defendant's silence to establish absence of remorse, but only on any available affirmative admissible evidence, this

10

issue is now moot.

6. <u>Death recommended, justified or appropriate</u>

Plunkett observes that 18 U.S.C. § 3593(e) states that the jury, after weighing aggravating and mitigating factors, "shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence." The defendant contends that the use of the word "recommend" in this context is misleading in that it could give the jury the impression it is making only a recommendation that the court may or may not follow, when in reality, a recommendation of death will result in the imposition of the death penalty. In <u>Caldwell v. Mississippi</u>, 472 U.S. 320 (1985), the United States Supreme Court held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U.S. at 328-29 (1985). The court agrees that the use of the word "recommend" in this context could be misleading and should not be used during argument or in jury instructions.

Plunkett next asks the court to bar any reference to the death penalty as "justified" or "appropriate." With regard to "justified," several sections of the Federal Death Penalty Act include language such as "In determining whether a sentence of death is justified. . . ." <u>See</u> 18 U.S.C. § 3592(b), (c) & (d). The defendant contends, however, that any use of the term "justified" in relation to the possible sentence would mislead the jury in that it would be an invitation to proceed directly from the weighing process to the death sentence in violation of the Eighth Amendment. With regard to "appropriate," 18 U.S.C. § 3593(c) uses that term with regard to argument by the government and defendant "as to the appropriateness in the case of

11

imposing a sentence of death." Plunkett contends that "[t]o permit the jury to believe that a death sentence need only be 'appropriate' alters the focus of its consideration of the evidence away from what conclusion the evidence demands to a consideration of what conclusion the evidence will allow" in violation of the Eighth Amendment.

The defendant cites no authority in support of its argument that the court should bar the use of the terms "justified" and "appropriate" from argument and jury instructions during any penalty phase of the trial. The court finds that the use of these terms is probably permissible in most contexts, but it will take the defendant's concerns into account in designing voir dire questions and jury instructions.

B. **Bifurcating the Penalty Phase**

Plunkett moves the court to bifurcate the penalty phase of the trial, should one become necessary, so that the first phase would provide a preliminary jury determination of his eligibility for the death penalty followed by a second phase in which the government would present evidence regarding non-statutory aggravators. Statutory aggravators which might make the defendant eligible for the death penalty are not simply sentencing factors, but elements of the capital crime itself. See Ring v. Arizona, 356 U.S. 584 (2000). Plunkett argues that the holding in Ring requires that prejudicial and inflammatory evidence must be excluded from the proceeding at which the jury determines whether he is eligible for the death penalty.

While the guilt phase of a trial is governed by the formal rules of evidence and procedure, those rules are somewhat loosened during a typical sentencing proceeding in that there is no presumption of innocence and evidence is permissible that would normally be inadmissible in the guilt phase. See 18 U.S.C. § 3593(c). As the defendant notes, there could be a risk that the

12

government's victim impact testimony and bad character evidence, which would normally be part of a sentencing proceeding, could influence the jury's consideration of his guilt or innocence with regard to the threshold intent factors and the statutory aggravators that would make him eligible for the death penalty.

A bifurcated process is not required by 18 U.S.C. § 3593(c), however. In fact, the statute contemplates the possibility of a unitary proceeding and, while not prohibiting potentially prejudicial information, provides that the district court may exclude certain information if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. 18 U.S.C. § 3593(c). Nevertheless, neither does the statute forbid a bifurcated sentencing proceeding.

The Government contends that, because this is not a difficult or complex case, there is no need for a bifurcated proceeding. While the Government may be correct that this is not a complex case, the court nevertheless finds that a unitary proceeding would create the risk of some juror confusion. Furthermore, a bifurcated proceeding would address any potential Crawford issues as discussed in section IV.A.2., supra. Therefore, the court finds that, if the defendants are convicted of one or more death eligible offenses, the ensuing sentencing hearing will proceed in two phases, that is an eligibility phase, during which the Government will present evidence regarding threshold intent factors and statutory aggravating factors, followed by a selection phase, if required.

C. **Jury Instruction Issues**

1. Tripartite findings

Plunkett has proposed special verdict forms for the required findings of threshold intent

13

factors and statutory aggravating factors. On those forms, he proposes three possible jury alternatives for each factor: (1) unanimously find not proven beyond a reasonable doubt; (2) unable to reach unanimous agreement; and (3) unanimously find proven beyond a reasonable doubt. Because the parties have agreed to address this issue at a later date, the court will take Plunkett's proposed special verdict forms under advisement at this time.

2. <u>Life without parole instruction</u>

Plunkett has proposed that the court deliver a jury instruction regarding the mitigating factor of life without parole. When future dangerousness is an issue, "and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process entitles the defendant to 'inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel.'" <u>Shafer v. South Carolina</u>, 532 U.S. 36, 39 (2001) (quoting <u>Ramdass v. Angelone</u>, 530 U.S. 156, 165 (2000) (plurality opinion)). Plunkett asks the court to go further and instruct the jury that, if life without the possibility of parole is the only alternative to death, it must accept that the defendant has proved the life without parole mitigating factor as a matter of law.

In a capital case, mitigating factors presented to the jury must include "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." <u>Lockett v. Ohio</u>, 438 U.S. 586, 604 (1978). The Federal Death Penalty Act goes somewhat further than this basic constitutional requirement, however. The Act first requires that "the finder of fact *shall* consider *any* mitigating factor" in determining whether to impose a sentence of death upon a defendant. 18 U.S.C. § 3592(a) (emphasis added). It goes on to list specific factors such as impaired capacity, duress, minor

14

participation, no prior criminal record, equally culpable defendants who will not be punished by death, disturbance, victim's consent and other factors. 18 U.S.C. § 3592(a)(1)-(8). The other factors category includes other factors in the defendant's background, record, or character or any other circumstance of the offense that would mitigate against the imposition of a sentence of death. 18 U.S.C. § 3592(a)(8). This list is not intended to be all inclusive, however, as evidenced by the broad language in the opening sentence of the statute. See United States v. Sampson, 335 F. Supp. 2d 166, 194-95 (D. Mass. 2004) (holding that the Act demands that the fact finder consider any mitigating factor, including those other than the defendant's character and record and the circumstances of the offense).

The court agrees that life without parole is a proper mitigating factor that may be considered in lessening the severity of a defendant's sentence and that can assuage the jury's fear of the defendants' future dangerousness. As previously noted, however, one of the death eligible offenses with which the defendants are charged carries the possibility of punishment by death, or by imprisonment for any term of years or for life. 18 U.S.C. § 924(j)(1). If, however, the defendants are convicted of one or more death eligible offenses in which the only other sentencing option is life imprisonment without the possibility of parole, the court intends to have the jury consider life without parole as the only alternative during the sentencing proceeding when weighing aggravating and mitigating factors.

3.  Lingering or residual doubt instruction

Plunkett has requested the court to deliver a jury instruction regarding the mitigating factor of lingering or residual doubt. A majority of the members of the Supreme Court have indicated that an instruction on residual doubt is not required by the Eighth Amendment. See

Franklin v. Lynaugh, 487 U.S. 164, 174 (1988). Some courts have relied on the Supreme Court's decision in Franklin, and denied defense requests for a residual doubt instruction. See Mason v. Mitchell, 320 F.3d 604, 639-40 (6th Cir. 2003); Ruiz v. Norris, 868 F. Supp. 1471, 1549 (E.D. Ark. 1994). As previously discussed, however, the death penalty statute at issue here, 18 U.S.C. § 3592(a), contains broader language and includes the requirement that the jury shall consider *any* mitigating factor. In United States v. Davis, 132 F. Supp. 2d 455 (E.D. La. 2001), one district court examined the issue and determined that "[t]he statute demands the fact finder consider 'any mitigating' factor . . . period." 132 F. Supp. 2d at 464. Thus, if a residual doubt argument is offered by the defense, the "argument is permissible under 18 U.S.C. § 3592 and must be considered by the jury." Id. at 468.

A District Court in Maryland agreed with the reasoning of the Court in Davis and held that it was appropriate to instruct the jury that it could consider residual doubt as a mitigating factor. United States v. Foster, 2004 WL 868649, *1 (D. Md. 2004) (unpublished). See also, United States v. Lentz, Criminal No. 01-150-A (E.D. Va. 2003) (lingering doubt instruction given by Judge Lee). In addition, courts have noted the effectiveness of using a strategy focusing on residual doubt during sentencing proceedings. See, e.g., Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000); Moore v. Johnson, 194 F.3d 586 (5th Cir. 1999).

The court agrees that lingering or residual doubt is probably a proper mitigating factor. Whether the court decides to give a jury instruction on residual doubt may depend on whether the evidence presented at trial is adequate to provide a reasonable person with residual doubt of the defendants' guilt, should they be found guilty beyond a reasonable doubt. Thus, the court will take this request under advisement until the conclusion of the guilt phase of the trial. In addition,

16

the court is not currently satisfied with the wording of the suggested residual doubt instruction provided by counsel for defendant Plunkett. As agreed at the hearing, Plunkett's defense counsel shall provide alternate language for the court to consider for this instruction.

The court will take up scheduling and venue issues in a separate Memorandum Opinion and Order.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 11th day of May, 2005.

_____
United States District Judge