CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 0 1 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Criminal Action No. 4:04CR70083 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| LANNY BENJAMIN BODKINS | ) By: Hon. Glen E. Conrad |
| ANTHOINE PLUNKETT | ) United States District Judge |
| | ) |
| Defendants. | ) |

The parties have filed the following pretrial motions in this case: (1) motion to regulate

jury selection filed by defendant Anthoine Plunkett ("Plunkett"); (2) motion for jury instruction

on access to electronic media filed by defendant Plunkett; (3) motion in limine to introduce

evidence of statement of decedent filed by the government; (4) motion in limine regarding prior

consistent statements and non-testimonial hearsay filed by the government; (5) motion to sever

defendants filed by defendant Plunkett; (6) objection to defendant's proposed residual doubt

instruction filed by the government; (7) motion in limine to introduce evidence of previous

search warrants filed by the government; (8) motion to exclude testimony and/or statement of

Felix Cobbs, III filed by defendant Plunkett; and (9) motion for presentence reports on potential

government witnesses filed by defendant Plunkett. Defendant Lanny Benjamin Bodkins

("Bodkins") has indicated that he joins in on all of defendant Plunkett's motions. The court held

hearing on these outstanding motions on July 19, 2005 and July 29, 2005.

I.      Defendant Plunkett's Motion to Regulate Jury Selection

Defendant Plunkett has laid out out several requests relating to the distribution and

receipt of the juror questionnaire to be used in this case, alternate jurors, peremptory challenges,

and the conduct of <u>voir dire</u>. The court will address these issues in turn.

First, defendant Plunkett requests that the juror questionnaires be mailed to prospective jurors no later than June 24, 2005. The juror questionnaires were actually mailed out by the Clerk's office on July 5, 2005. Plunkett also asks that the returned questionnaires be "distributed" to counsel no later than July 25, 2005 and that counsel be required to submit an agreed list of prospective jurors whose questionnaires indicate they cannot serve in this case no later than August 10, 2005. The court agrees with the suggested deadline of August 10 and will require counsel to submit their agreed list of prospective jurors who cannot serve by that date. On or around July 25, 2005, the Clerk's office staff will advise counsel for both sides that copies of the juror questionnaires are available for them to pick up from the Clerk's office.

Next, defendant Plunkett requests a jury panel of fifteen persons, three of whom would be alternate jurors selected by lot and unidentified until the jury retires to deliberate. Noting that the government has made no objection to this request, the court will grant Plunkett's request with regard to the composition of the jury. Because the court has granted defendant's request that alternate jurors remain unidentified until the jury begins deliberations, the court will also permit both sides to exercise their peremptory challenges, including those reserved for alternate jurors, as a whole.

With regard to such peremptory challenges, defendant Plunkett has also stated that he will waive his right to the twenty peremptory challenges permitted to each side in a capital case pursuant to Federal Rule of Criminal Procedure 24(b)(1) if the government will agree to proceed under Rule 24(b)(2), which would allow him ten peremptory challenges and the government six. The government, however, has not consented to this arrangement and requests that peremptory

2

challenges remain governed by Rule 24(b)(1). In this case, both defendant Plunkett and defendant Bodkins have requested five additional peremptory challenges to be exercised by each of them separately.

A defendant does not have a constitutional right to peremptory challenges. <u>Georgia v. McCollum</u>, 505 U.S. 42, 58 (1992). Such challenges, however, have been created to serve the "constitutional end of an impartial jury and a fair trial." <u>Id.</u> Furthermore, the trial court does have the discretion to grant additional peremptory challenges to multiple defendants and to permit the exercise of these additional challenges either separately or jointly. Fed. R. Crim. P. 24(b); <u>United States v. Meredith</u>, 824 F.2d 1418, 1423 (4th Cir. 1987).

The government has argued that twenty peremptory challenges should be adequate if the defendants can allocate these between themselves. The defendants have pointed out, however, that they expect both their defenses during the guilt phase of the trial and their mitigation cases during the penalty phase, if necessary, to be quite different. Furthermore, the defendants have very different backgrounds and would like to avoid having to make trades with one another over each peremptory strike. As a result, the court will permit each defendant to separately exercise some number of peremptory strikes in addition to the twenty granted to the defendants jointly by the Rule, however the appropriate number will depend upon the size of the ultimate panel during jury selection and may be less than the five requested by each defendant.

Finally, defendant Plunkett has requested that the capital specific portion of <u>voir dire</u> be individual and sequestered. While the government has made no objection to individual and sequestered <u>voir dire</u>, the court typically prefers to conduct <u>voir dire</u> by small groups rather than on an individual basis. In this case, the court plans to use groups of three for the capital specific

3

portion of voir dire. Such a small group size should be adequate to address the defendant's concerns regarding the accuracy of the information provided by prospective jurors while promoting a more efficient jury selection procedure.

II.     Defendant Plunkett's Motion for Jury Instruction on Access to Electronic Media

Defendant Plunkett has moved for a jury instruction on access to electronic media to be given at the beginning of voir dire, prior to the presentation of evidence, and prior to deliberations at the guilt and penalty phases of the trial. Essentially, the jury instruction would add to the general warnings already included in the court's standard jury instructions by including specific admonitions regarding jurors' use of the internet and e-mail. A defendant may be entitled to a new trial when evidence that is prejudicial and was not introduced into evidence during the trial comes before the jury. United States v. Lentz, 3183 F.3d 191, 219 (4th Cir. 2004). Such a result may occur when jurors use electronic research to find material that is not in evidence. See, e.g., People v. Wadle, 77 P.3d 764 (Colo. App. 2003) (new trial granted because juror researched an anti-depressant drug on the internet). The government has raised no objection to this proposed jury instruction. The court agrees that a specific warning with regard to electronic media would be useful and intends to give the defendant's proposed instruction each time the jury is excused for the day.

III.    Government's Motion in Limine to Introduce Evidence of Statement of Decedent

The government intends to introduce into evidence at trial a statement made by the victim, Tyree Wimbush, to his girlfriend, Talia Chandler. According to the government, a half hour before Wimbush was killed, he and Ms. Chandler were standing on the porch of his aunt's house in Danville. At that time, Wimbush pointed to a dark colored car and allegedly stated:

4

"There go those white guys from Tennessee." When Ms. Chandler looked up, she saw a dark colored car driving away. Ms. Chandler reported this statement to law enforcement officers on the day after the killing.

The government acknowledges that this statement is hearsay, but contends that the statement should nevertheless be admissible under the present sense impression exception to the general rule against hearsay. Under this exception, hearsay is admissible if it is a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. Fed. R. Evid. 803(1). The event or condition should be ongoing and startling or one that has just occurred. United States v. Lentz, 282 F. Supp. 2d 399, 410 (E.D. Va. 2002). See also, United States v. Jackson, 124 F.3d 607, 618 (4th Cir. 1997). The key to this exception is immediacy. Lentz, supra, 282 F. Supp. 2d at 410.

In this case, there was a close connection in time between Wimbush's statement and Ms. Chandler's immediate observation of the dark car driving away. As the government notes, Ms. Chandler reported this statement to the police the day after the murder when the police were not yet investigating any suspects in Tennessee. Furthermore, the defendants have failed to object to the admissibility of the decedent's statement. Thus, the court concludes that the statement is admissible at trial under the present sense impression exception to the hearsay rule pursuant to Federal Rule of Evidence 803(1).

IV.     Government's Motion in Limine Regarding Prior Consistent Statements and Non-Testimonial Hearsay

A.     Prior Consistent Statements

The government has noted that it intends to offer as a witness Darel Taylor who will

5

testify that he and defendant Bodkins were hired by defendant Plunkett to murder Tyree Wimbush because Plunkett believed that Wimbush was a snitch for the government. The government alleges that Taylor made similar statements to non-law enforcement witnesses at a time proximate to the murder of Wimbush. The government contends that it should be permitted to introduce those prior consistent statements into evidence as substantive evidence if the defense attacks Taylor's later statement to law enforcement as a recent fabrication.

The prior statement of a witness is not considered hearsay and may be admitted as substantive evidence if:

> The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

Fed. R. Evid. 801(d)(1). Such consistent statements may be offered, however, only "when those statements were made before the charged recent fabrication or improper influence or motive" came into being. Tome v. United States, 513 U.S. 150, 167 (1995). Therefore, if Taylor's statements were made before he could have been improperly influenced or developed an improper motive, the statements may be admissible. However, at this time the government has not provided any information in regard to the context or specific content of these statements.

The government also contends that Taylor's prior consistent statements should be admissible for the limited purpose of rehabilitation, should he be impeached on the witness stand. Generally, "[p]rior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited." Tome, 513 U.S. at 157. Nevertheless, a party may attempt to rehabilitate a witness who has been impeached

6

with a prior inconsistent statement by the use of a prior consistent statement. United States v. Ellis, 121 F.3d 908, 919 (4th Cir. 1997), cert. denied 522 U.S. 1068 (1998). Under this "more relaxed standard", the court determines whether the consistent statement has "some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony." Id. at 920 (internal citations omitted).

In either case, however, as the court has noted above, the government has not provided detail with regard to the specific content of the allegedly consistent statements or the circumstances surrounding the statements. The court will take the motion with regard to prior consistent statements under advisement at this time and decide whether the statements are admissible at the appropriate point during the trial.

B.    Non-Testimonial Hearsay

The government has stated that it intends to introduce the following statements during the trial of this matter:

1.    Witness A will testify that, prior to Darel Taylor's interview with investigators in September 2002, Taylor told Witness A that Taylor was present when Bodkins murdered Tyree Wimbush, that Taylor drove the car from Tennessee to Virginia and that Bodkins did the shooting.

2.    Witness B will testify that Plunkett told Witness B that Plunkett believed Wimbush was a snitch responsible for a number of raids by law enforcement. Plunkett suggested that they pool their money and have Wimbush killed. Plunkett further stated that he knew "two white boys" who would commit the murder for a sum of money.

3.    Witness C will testify that, following a search of Plunkett's home, Plunkett told Bodkins, in the presence of Witness C, that Plunkett was going to find out who snitched on him and "get him." Bodkins told Plunkett to let Bodkins know if Plunkett identified the snitch.

4.    Witness C will also testify that, after the murder, Bodkins was angry and upset because Plunkett owed him money and he had not been paid. Bodkins stated, "I went up there and killed that dude . . . I went up there and I did that shit for that man and he ain't paid me nothin'."

7

The court has already addressed the potential testimony referred to in statement 1 above in Section A, supra, as a prior consistent statement.

With regard to the remaining statements, the government proposes to offer this testimony against both defendants at their joint trial. Some of the statements appear to implicate not only the declarant, but the co-defendant as well. Neither co-defendant is expected to testify at trial.

Both parties appear to agree that, as to himself, a defendant's statements implicating himself in the conspiracy or the killing are not hearsay. Fed. R. Evid. 801(d)(2)(A). Statements of one defendant which implicate another co-defendant, however, are generally hearsay. Fed. R. Evid. 801(c). Thus, such statements must both fall within one of the exceptions to the hearsay rule and satisfy the requirements of the Confrontation Clause. The government contends that, under the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), the statements made by Plunkett and Bodkins are non-testimonial statements made to non-law enforcement informants and, as such, should be either exempted from Confrontation Clause scrutiny altogether or continue to be evaluated under the more flexible reliability standards set forth in Ohio v. Roberts, 448 U.S. 56 (1980).

The government's argument that non-testimonial statements made to non-law enforcement informants are exempt from Confrontation Clause scrutiny altogether remains foreclosed by the Supreme Court's holding in White v. Illinois, 502 U.S. 346 (1992). In White, the government attempted to raise the argument that the Confrontation Clause applied only to cases involving the use of ex parte affidavits or their equivalents and not to cases involving out of court statements normally admitted under an accepted hearsay exception. 502 U.S. at 352. The Court rejected this argument and held that "[s]uch a narrow reading of the Confrontation

8

Clause which would virtually eliminate its role in restricting the admission of hearsay testimony, is foreclosed by our prior cases." Id. Although the Supreme Court in Crawford, supra, did question the viability of its holding in White, it specifically declined to overrule the earlier case. Crawford, 541 U.S. at 61.

In Crawford, the Court addressed the admissibility of hearsay statements in light of the Confrontation Clause, which guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Court noted a distinction between testimonial and non-testimonial statements, noting that the former includes, at a minimum, "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and [] police interrogations." 541 U.S. 68. In cases involving testimonial hearsay, the Court held that such statements may be admitted into evidence only when the declarant is unavailable and the defendant has had a prior opportunity for cross-examination. Id. In cases involving non-testimonial hearsay, however, the Court noted that "it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law – as does [Ohio v.] Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." Id.

The statements here were not made to law enforcement officers, but to friends or acquaintances of the declarants, who did not appear to expect those statements to be used in a criminal proceeding. Thus, the statements are non-testimonial and the test from Ohio v. Roberts would apply. Under that test, a hearsay statement may satisfy the requirements of the Confrontation Clause if it falls within a "firmly rooted" exception to the hearsay rules or if it otherwise bears "particularized guarantees of trustworthiness." Ohio v. Roberts, 448 U.S. 56, 66

9

(1980). As noted previously, however, this case involves the statements of one defendant which implicate a co-defendant at a joint trial. In Bruton v. United States, the Supreme Court held that a confession from a co-defendant which implicates the defendant may not be admitted, under the Confrontation Clause, at a joint trial at which the co-defendant fails to testify. Bruton v. United States, 391 U.S. 123, 127-28 (1968). Furthermore, confessions of an accomplice "that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." Lilly v. Virginia, 527 U.S. 116, 134 (1999).

Defendant Plunkett contends that the rules from Bruton and Lilly, supra, compel a holding that any statement made by a co-defendant that inculpates a defendant at a joint trial when the co-defendant will be unavailable should be inadmissible against the non-declarant defendant under the Confrontation Clause. Thus, not only confessions, but out of court statements to non-law enforcement informants would be inadmissible unless properly redacted. In Lilly, however, the Supreme Court specifically referred to "confessions" and stated that its holding did not impose "a 'blanket ban on the government's use of [nontestifying] accomplice statements that incriminate a defendant.' Rather, it simply means that the government must satisfy the second prong of the Ohio v. Roberts [] test in order to introduce such statements." 527 U.S. at 134 n.5. See also United States v. Locklear, 24 F.3d 641, 646 (4th Cir. 1994) (concluding that the co-defendant's statement, which was not a confession, did not violate Bruton because Bruton is limited under Richardson v. Marsh, 481 U.S. 200 (1987) to cases involving "facially incriminating confessions"); Vincent v. Parke, 942 F.2d 989, 991 (6th Cir. 1991) (refusing to find Bruton error because, inter alia, Bruton was inapplicable when the non-

10

testifying co-defendant's statement cannot be characterized as a confession). But see United States v. Truslow, 530 F.2d 257, 263 (4th Cir. 1975) (rejecting the government's argument that Bruton is strictly limited to confessions made to law enforcement officers).

Furthermore, the Fourth Circuit has held "that the Bruton rule does not apply if the nontestifying co-defendant's statement is admissible against the defendant under the co-conspirator exception to the hearsay rule set forth in Federal Rule of Evidence 801(d)(2)(E)." United States v. Shores, 33 F.3d 438 (4th Cir. 1994). See also White v. Illinois, 502 U.S. 346, 354 (1992) (approving of the use of co-conspirator's statements at trial). In other words, the co-conspirator exception to the hearsay rule is a "well-rooted" one.

Statements 2 and 3 appear to fall within the co-conspirator statement exception described in Federal Rule of Evidence 801(d)(2)(E). Under that exception, a statement is not hearsay if it is offered against a party and is made by a co-conspirator of a party during the course of and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). In Statement 2, defendant Plunkett allegedly tells a non-law enforcement informant that he thought Wimbush was the snitch responsible for a series of raids made by law enforcement. Plunkett also allegedly suggested that others pool their money to have Wimbush killed and stated that he knew two "white boys" who would commit the murder. In Statement 3, defendant Plunkett allegedly told Bodkins that he would discover the identity of the snitch and "get him." Defendant Bodkins allegedly told Plunkett to let him know after he discovered the identity of the snitch. These statements appear to go to the formation of the alleged plan to kill Wimbush, thus they appear to be both during the course of and in furtherance of the conspiracy to commit murder for hire. As such, the statements would be admissible against both Bodkins and Plunkett.

Statement 4 occurred after the murder and involved statements allegedly made by defendant Bodkins to a non-law enforcement informant, Jeffrin Nolan, wherein he expressed anger over Plunkett's failure to pay him for the killing. Defendant Bodkins also allegedly admitted that he had killed "that dude." The statements were apparently made at least two weeks after the murder and do not appear to have been made during the course of or in furtherance of the conspiracy. Instead, the government seeks to have the statements admitted as statements against penal interest pursuant to Federal Rule of Evidence 804(b)(3). This rule generally permits statements that are self-inculpatory, but does not allow hearsay statements that are non-self-inculpatory, "even if they are made within a broader narrative that is generally self-inculpatory." Williamson v. United States, 512 U.S. 594, 600-01 (1994).

In evaluating whether the statement bears "particularized guarantees of trustworthiness" under Ohio v. Roberts, supra, the court will consider (1) whether the statement is truly against the declarant's penal interest; (2) the circumstances under which the statement was made; and (3) the existence of corroborating evidence. According to the Supreme Court, the key to determining whether a statement is truly against penal interest is whether "a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Williamson, 512 U.S. at 603-04. That is, if "a reasonable person in the declarant's shoes would perceive the statement as detrimental to his [] own penal interest." United States v. Saget, 377 F.3d 223, 231 (2nd Cir. 2004).

The statement to Nolan appears to implicate Bodkins not only in a killing, but in a killing for which he expected payment, that is, in a murder for hire conspiracy. Thus, the statement qualifies being truly against penal interest for the purpose of the rule. Defendant Plunkett argues,

12

however, that the statement lacks the necessary guarantees of trustworthiness because Bodkins was allegedly in the midst of a crack cocaine binge at the time he made the statement. The government contends that Nolan was a longtime friend and drug confederate of Bodkins and that the statement was made in the context of that relationship. The government also notes that Bodkins apparently made similar statements to Nolan at other times, providing additional corroboration of the content of the statement. Based on these assertions, the court finds that the statement does contain the necessary particularized guarantees of trustworthiness. Furthermore, the fact that Bodkins may have been under the influence of crack cocaine at the time he made the statement goes to the statement's weight, not its admissibility.

Therefore, for the foregoing reasons, the court will grant the government's motion in limine in regard to non-testimonial hearsay and allow the admission into evidence at trial of Statements 2-4.

V.    Defendant Plunkett's Motion to Sever Defendants

Defendant Plunkett has moved to sever his trial from that of defendant Bodkins because the government intends to introduce at trial two statements made by Bodkins to third parties that Plunkett claims will violate his rights under the Confrontation Clause of the Sixth Amendment. In the Fourth Circuit, the general rule is that "defendants charged with participation in the same conspiracy are to be tried jointly." United States v. Akinkoye, 185 F.3d 192, 197 (4th Cir. 1999). A court may order severance, or any other relief that justice requires, if a joint trial would prejudice a defendant. Fed. R. Crim. P. 14(a). Such a severance would be appropriate only if (1) there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or (2) a joint trial would prevent the jury from making a reliable judgment about guilt

or innocence. <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993). Such a risk could occur in a situation where evidence is probative of a defendant's guilt but is admissible only against a co-defendant. <u>Id.</u>

Plunkett points to two statements that would be admissible against Bodkins, but would be hearsay as to Plunkett. First, Amarti Plunkett, defendant Plunkett's brother, will allegedly testify that Bodkins admitted, while incarcerated with Amarti in a Tennessee jail, that he had killed Wimbush and asked Amarti to seek defendant Plunkett's assistance with Bodkins's bail money because he had done defendant Plunkett a favor. Second, Jeffrin Nolan will allegedly testify that between July 22 and August 8, 1999, Bodkins admitted that he had killed Wimbush and complained that he had not been paid ("man, he ain't paid me . . . man, he ain't, paid me nothing"). The government intends to introduce both statements under the against penal interest exception to the hearsay rule as defendant Bodkins will be unavailable as a witness at trial.

Plunkett admits that these statements are not testimonial under <u>Crawford v. Washington</u>, 541 U.S. 36 (2004). Plunkett contends, however, that the statements do not include particularized guarantees of trustworthiness as required by <u>Ohio v. Roberts</u>, 448 U.S. 36 (2004), nor do they fall within a firmly rooted exception to the hearsay rule. <u>See</u> <u>Lilly v. Virginia</u>, 527 U.S. 116 (1999) (holding that the against penal interest exception is not a firmly rooted exception).

With regard to Bodkins's statement to Nolan, the court notes that this statement is identical to that discussed in V.B., <u>supra</u>, as Statement 4. As previously noted, the court intends to permit the introduction of this statement at trial as to both defendants. Therefore, because the statement is properly admissible against both defendants, it is not a ground on which to grant the

14

defendant's motion to sever.

With regard to Bodkins's statements to Amarti Plunkett, defendant Plunkett contends that they lack the required particularized guarantees of trustworthiness. Specifically, Plunkett argues that the statements were not the typical jailhouse inmate confidences in that Bodkins was attempting to obtain assistance in raising his bond by trying to convince Amarti that Bodkins had provided assistance to defendant Plunkett in the past. Thus, Plunkett concludes that Bodkins had a motive to fabricate or embellish his statements. On the other hand, the government responds that under the totality of the circumstances Bodkins's statements were against his penal interest and are trustworthy. The government points out that Amarti Plunkett was a previous acquaintance and cell mate of Bodkins. Furthermore, the government contends that Bodkins's statements to Amarti were similar to those previously made to Nolan and were based upon Bodkins's personal involvement in the crime.

The court has some concern with regard to the trustworthiness of Bodkins's statements to Amarti Plunkett based on the context in which the statements were allegedly made. The court intends to take the admissibility of these statements against defendant Plunkett under advisement until the time of trial when there would be an opportunity to conduct <u>voir dire</u> and gain further information regarding the content and context of Amarti Plunkett's statements. The court will deny the motion to sever, however defendant Plunkett may move for an appropriate redaction of Bodkins's statements to Amarti Plunkett should the court later determine that the portion of the statements implicating defendant Plunkett is inadmissible against him.

VI.    <u>Government's Objection to Defendant's Proposed Residual Doubt Instruction</u>

The court indicated at a previous hearing on this matter that it intended to give a residual

15

doubt instruction if warranted by the evidence presented at trial but that it was not satisfied with the language used in the defendant's proposed instruction. Defendant Plunkett has now submitted a revised proposed residual doubt instruction to which the government has again objected. The government first has a general objection to the characterization of residual doubt as a mitigating factor. Though the court notes the government's objection, the court also points out that it has previously ruled on this issue by holding that lingering or residual doubt is a mitigating factor. See Memorandum Opinion dated 5/11/2005.

The government has also noted specific objections to several sentences in the defendant's proposed instruction. Defendant Plunkett has responded to those objections. The court shares the government's concerns with regard to certain portions of the proposed instruction. Therefore, in light of the disagreement surrounding the currently proposed language, the court finds it necessary to draft the instruction and will circulate its proposed residual doubt instruction to all counsel prior to trial.

VII.    Government's Motion in Limine to Introduce Evidence of Previous Search Warrants

The government intends to introduce evidence at trial of the execution of three search warrants by the Danville police department: (1) on June 23, 1999 at 336 Locust Lane in Danville; (2) on June 29, 1999 at 402 Locust Lane in Danville; and (3) on July 14, 1999 at 906 Keister Street in Danville. The government alleges that defendant Plunkett was a drug dealer who often sold drugs in the area of these three locations. All three searches were conducted pursuant to lawful search warrants based upon the information of a confidential informant. Specifically, the government has indicated that it does not intend to introduce the warrants or the affidavits themselves at trial, but will put forth the testimony of a police officer from the City of Danville

16

police department who was present at all three searches.

After execution of the June 23, 1999 search warrant, police discovered approximately 150 grams of marijuana, $1,000 in U.S. currency and two firearms. The June 29, 1999 search warrant was executed at 402 Locust Lane, the home of Angela Wilson, Plunkett's girlfriend at the time. When police arrived at the residence, Plunkett was outside in the front yard. After a search of the house, police discovered a Nautica bag which contained Plunkett's identification and wallet, a letter to Plunkett from his attorney, digital scales, latex gloves and a small Crown Royal bag containing approximately 42 grams of cocaine. Two firearms were also discovered in the home. After the search, Plunkett fled the area and was pursued and arrested by police officers. He was charged with possession with intent to distribute a controlled substance and convicted after a bench trial. Plunkett's conviction was later overturned for lack of sufficient evidence. Plunkett v. Commonwealth, 2000 WL 1847629 (Va. App. Dec. 19, 2000).

During the execution of the July 14, 1999 search warrant, police arrested Troy Littlejohn and recovered 17 rocks of crack cocaine and a firearm. The government contends that its evidence will show that, after his arrest, defendant Plunkett became convinced that the confidential informant mentioned in the search warrants was Tyree Wimbush. The government also contends that on or about July 14, 1999, at a meeting in Danville with other individuals including Douglas Littlejohn, the brother of Troy Littlejohn, Plunkett told those in attendance that he believed the informant was Wimbush and that Plunkett "wanted him dealt with." Tyree Wimbush was killed on July 22, 1999 in Danville.

The government first contends that the search warrant evidence is admissible as direct evidence of the murder for hire conspiracy. That is, the evidence is necessary to complete the

17

entire story of the crime of conspiracy to commit murder for hire in that it explains the reason

Plunkett allegedly hired Bodkins and Taylor to kill Wimbush.  See United States v. Kennedy, 32

F.3d 876, 886 (4th Cir. 1994) (allowing evidence of prior drug distribution activities of the

defendant to provide jury with background information on defendant's activities during

preparatory states of a drug conspiracy in order to "complete the story of the crime on trial")

(citing United States v. Masters, 622 F.2d 83, 87 (4th Cir. 1980)).  Unlike the situation in

Kennedy, however, the search warrant evidence here does not comprise part of the criminal

activity for which the defendants are charged.  Instead, it primarily goes to motive.

     As evidence of motive, the government contends that the evidence is admissible under

Federal Rule of Evidence 404(b) which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a
> person in order to show action in conformity therewith.  It may, however, be admissible
> for other purposes, such as proof of motive, opportunity, intent, preparation, plan,
> knowledge, identity, or absence of mistake or accident . . .

Fed. R. Evid. 404(b).  This rule is a rule of inclusion, and as such, the list provided in the rule is

not intended to be exhaustive.  United States v. Queen, 132 F.3d 991, 994-95 (4th Cir. 1997).  To

be admissible under the rule, the evidence must satisfy the following criteria:

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must
> not be offered to establish the general character of the defendant.
> (2) The act must be necessary in the sense that it is probative of an essential claim or an
> element of the offense.
> (3) The evidence must be reliable.
> (4) The evidence's probative value must not be substantially outweighed by confusion or
> unfair prejudice in the sense that it tends to subordinate reason to emotion in the
> factfinding process.

Queen, 132 F.3d at 997.  Furthermore, a limiting jury instruction to explain the purpose for

which the evidence of prior acts is admitted provides additional protection to the defendant.  Id.

"Evidence is necessary where, considered in the light of other evidence available to the government, it is an essential part of the crimes on trial, or where it furnishes part of the context of the crime." Id. (internal citations omitted). Evidence can be unfairly prejudicial when it has an "undue tendency to suggest decision on an improper basis," such as an emotional one. Id. at 994 (internal citations omitted).

With regard to the searches conducted on June 23, 1999 and July 14, 1999, defendant Plunkett contends that the bad acts revealed through the two searches were the acts of others, not himself. Nothing in Rule 404(b), however, requires that the other crimes, wrongs or acts must be those of the defendant himself. Plunkett also argues that Queen, supra, requires a prior act by a defendant which is similar to the act being proved to trigger consideration under Rule 404(b). It is true that the Court in Queen held that a prior act becomes more relevant the more similar it is to the act being proved. Queen, 132 F.3d at 997. That case dealt with evidence of prior acts of witness tampering in a trial for current witness tampering, however, where the similarity in the acts was being used to prove the intent element. Similarity between a prior bad act and an act being proved would not necessarily be required in every case under Rule 404(b), such as when attempting to show motive as here.

Plunkett also contends that he had no connection to the search warrants or the affidavits in support thereof and that no evidence recovered from those searches is relevant to the current case against him. The government has agreed not to introduce the warrants or affidavits themselves at trial. The remaining evidence related to the execution of the search warrants falls into two categories: (1) the searches themselves, including the purpose of the searches, the basis for the searches, and the identities of those present at the time the searches were conducted; and

19

(2) a description of the items seized. With regard to the first category of evidence, the court finds that it is directly relevant to Plunkett's purported motive in the case and is necessary in that it explains the context in which the murder was allegedly committed. The court also finds that this evidence appears to be reliable because Danville Police Officer Dennis Haley, who was present during the execution of all the search warrants, will testify at trial as to their basis and execution. With regard to the final prong of the <u>Queen</u> test, whether the evidence's probative value is substantially outweighed by any unfair prejudice, the court finds that the evidence is highly probative of motive and that any resulting prejudice is not substantial.

With regard to the second category of evidence, however, the court reaches the opposite conclusion. The probative value of the proceeds alone is not highly significant, particularly when compared with the potential prejudice to the defendant if the jury were to hear a listing of currency, drugs, firearms, and related items seized from individuals associated with defendant Plunkett. As a result, the government may present testimony in regard to the execution of the search warrants except that it may not present testimony describing the specific proceeds of the searches.

The search conducted on July 29, 1999, on the other hand, does have a more direct connection to defendant Plunkett, which he does not dispute. In fact, Plunkett admits that he was charged with possession with the intent to distribute cocaine as a result of the execution of that warrant. Plunkett further admits that the government may admit evidence that he was charged, convicted and subsequently acquitted of that charge. However, Plunkett does contend that, because he was exonerated of any wrongdoing in state court, there was no wrong or act on his part that would actually trigger Rule 404(b). If that is the case, Rule 403 would apply and would

20

allow for the exclusion of the search warrant evidence if its probative value would be substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Again, the evidence related to the execution of the June 29 search warrant falls into two categories: (1) the search itself, including the purpose of the search, the basis for the search, and the identities of those present at the time the search was conducted; and (2) a description of the items seized. For the reasons previously stated with regard to the June 23 and July 14 searches, the first category of evidence would be admissible, however the evidence regarding the proceeds of the search will not be admitted because of the danger of unfair prejudice to defendant Plunkett, particularly in light of his eventual exoneration on the related drug charges.

The government also noted at the hearing that it intends to present evidence that defendant Plunkett fled the scene of the search and was apprehended by police. The court finds that evidence of the defendant's flight is not relevant to the current charges against him and would not be admissible. The government may present evidence that defendant Plunkett was criminally charged based on the search, but may not present evidence regarding his behavior at the time.

VIII.   Defendant Plunkett's Motion to Exclude Testimony and/or Statement of Felix Cobbs, III

In connection with the drug charges stemming from the execution of the June 29, 1999 search warrant at 402 Locust Lane in Danville, defendant Plunkett retained Brian Turpin to represent him during trial. After his conviction, Plunkett also retained attorney Glenn Berger to assist with what eventually proved a successful appeal from that conviction. On June 26, 2000, Felix Cobbs, III was arrested by the Danville police for selling cocaine. Cobbs gave a statement to police on June 28, 2000 in which he implicated Plunkett in a scheme to murder Wimbush. In

21

September 2000, Cobbs retained attorney Berger, the same attorney who had earlier represented Plunkett, to represent him in connection with the criminal charges. On April 23, 2002, Cobbs was tried in Circuit Court. Cobbs was convicted and sentenced to eleven years in prison, however he has never been transferred to the Department of Corrections.[1] On January 26, 2004, Berger filed a motion on Cobbs's behalf seeking suspension of some portion of his sentence based upon aid provided to the United States. Berger has also been in contact with the United States Attorney's office, the Danville police department and the Commonwealth's Attorney for the City of Danville in regard to Cobbs's cooperation with authorities on the current case against Plunkett.

The defendant contends that, to the extent that his former attorney has disclosed confidential attorney-client communications that operate detrimentally to him in this criminal case, his rights under the Sixth Amendment may have been violated. Thus, the defendant moves the court to exclude any of Cobbs's testimony that reflects any disclosures that Berger may have made, either intentionally or unintentionally, to Cobbs that included confidential information received from Plunkett during that earlier representation. The defendant also calls upon the court to require the government to prove that Cobbs's trial testimony has not been shaped, directly or indirectly, by any disclosure by Berger of Plunkett's confidences.

At a hearing on the matter, attorney Berger admitted that he had an attorney-client relationship with defendant Plunkett in regard to the appeal from Plunkett's criminal conviction on drug charges in 1999. Berger further admitted that his correspondence with Turpin indicates

---

[1] The state court retains jurisdiction to reduce a sentence until the sentenced inmate has been transferred from jail to the Department of Corrections. Va. Code Ann. § 19.2-303.

22

that he had had conversations with Plunkett regarding the confidential informant and the possible exculpatory evidence that the informant might provide. Berger also stated that he had some conversations with Cobbs about the information Cobbs could provide to the government, but that he did not remember the specifics of what had been discussed. Berger did testify that he was not aware that Plunkett was the defendant in the case in which Cobbs was providing assistance until recently. Berger also specifically denied that he had ever advised Cobbs of anything he might have learned through his earlier representation of Plunkett.

As evidence in support of his contention that Cobbs did obtain information improperly from Berger, Plunkett points to a statement in Cobbs's June 2000 statement to officers in the Danville police department. In that statement, Cobbs claimed that Plunkett "said out of the three houses that got raided Tyree is the only one that went to all of them." See Defendant's Exhibit 4 p.1. In his grand jury testimony in 2004, Cobbs responded to a question from a grand juror with this statement: "And I think he thought that by eliminating the middleman, the police had no bridge to cross. You didn't have somebody who could come up and say oh, I went and bought dope from him." See Defendant's Exhibit 4 p.2. Defendant Plunkett contends that the first statement exhibits a less personalized description of the informant's actions, i.e. the informant went to the three houses, whereas the later statement is more personalized, i.e. the informant bought dope from him. Thus, the defendant concludes, in the intervening period between the two statements, Cobbs must have obtained additional information regarding the confidential informant from Berger.

Even assuming that the government bears the burden of proving that Cobbs did not obtain information from Berger in violation of Plunkett's Sixth Amendment right to counsel, the

defendant cannot prevail. There is simply no evidence to show that Berger actually provided any confidential information to Cobbs. Berger himself specifically denied that he had violated his obligations to Plunkett by disclosing such information. The defendant has provided no evidence to impeach Berger's credibility. Though there is some evidence that Cobbs exhibited more detailed knowledge during his testimony before the grand jury than in his earlier statement to the police, there are several possible explanations that do not implicate a violation of Plunkett's Sixth Amendment rights. For example, Cobbs could have simply remembered more specifics regarding the conversation, he could have obtained further information from another source, or he could have provided more detail in response to specific questions from the Assistant United States Attorney or grand jurors themselves during his testimony. Furthermore, the court believes that it may draw an inference of professional propriety on the part of an attorney which this circumstantial evidence cannot overcome. Once again, there is a total absence of any direct evidence establishing a breach of professional responsibility of Sixth Amendment proportion. For the foregoing reasons, the court will deny defendant Plunkett's motion to exclude the testimony of Cobbs.

Plunkett also contends that, if Cobbs himself fails to testify at trial, any statements he made to law enforcement officers after his arrest that implicate Plunkett would be inadmissible testimonial hearsay under Crawford v. Washington, 541 U.S. 36 (2004). The court agrees that such statements are testimonial and would probably be inadmissible in the event that Cobbs is not a witness at trial. Nevertheless, the government has indicated its intention to call Cobbs as a witness, thus the court need not specifically rule on this issue at this time.

IX.   Defendant Plunkett's Motion for Presentence Reports for Potential Government
      Witnesses

Defendant Plunkett has moved the court to order the government to produce Federal presentence reports and to authorize the issuance of a subpoena duces tecum for any state presentence reports for a list of potential government witnesses. In support of his motion, defendant Plunkett asserts that the reports contain exculpatory information that he can not otherwise obtain because the identifying information, including dates of birth and social security numbers, of the potential witnesses were blacked out in discovery provided to the defendants. The defendant also stated at the hearing that the reports might include information that would bear on the witnesses' veracity.

Courts are reluctant to permit the disclosure of a confidential presentence report to one other than the subject of the report because of the potential chilling effect on contributors to the report and the privacy interest of the subject in the material included in the report. United States v. Trevino, 89 F.3d 187, 191 (4th Cir. 1996). Furthermore, a defendant may use the request for a presentence report as an otherwise impermissible fishing expedition for impeachment or exculpatory material. Id. at 192. As a result, a defendant must clearly specify "the information contained in the report that he expects will reveal exculpatory or impeachment evidence." Id. That is, he must "plainly articulate how the information contained in the PSR will be both material and favorable to his defense." Id. If the court is satisfied, it may then order the presentence reports to be delivered for in camera review. Id. The court would then review the reports to determine whether it is appropriate to disclose all or part of the reports to the defendant. Id.

In this case, defendant Plunkett has made a general request for the presentence reports of potential witnesses and has attempted to justify his request with a wide-ranging list of possible exculpatory information that could be included in the reports, such as information about drug use and addiction, mental health issues, and previous convictions and arrests. The court finds that the need to maintain the confidentiality of the reports is compelling and that the defendant has failed to overcome that need with a plain articulation of the exculpatory information he seeks and how it will be material to his defense.

Nevertheless, the court does recognize the need for the defendants to have adequate identifying information to investigate the potential witnesses against them. At the hearing, the government indicated it was willing to disclose the witnesses' dates of birth and social security numbers. The government shall provide this information to the defendants immediately. Furthermore, the government shall provide NCIC printouts to counsel for the defendants for each potential witness. If any issues should arise regarding the admissibility of convictions revealed in the NCIC reports, the parties shall attempt to resolve them prior to trial. If they cannot be resolved, the court will take up any such issues during the trial.

The court also agrees with the defendant that the mental health history of potential witnesses is relevant. Thus, the government shall provide such information in its possession, including any commitment histories, to counsel for the defendants as soon as possible. In addition, with regard to information obtained for any state presentence reports, the court will issue subpoenae duces tecum to the appropriate state entities if the request is phrased to protect the confidential aspects of the reports. Specifically, the request should seek excerpts or redacted versions of the reports to include only mental health and/or drug addiction summaries of

26

information obtained from third parties, rather than that obtained from one on one interviews with the subjects of the reports.

X.      Sequestration Issues

Pursuant to Federal Rule of Evidence 615, counsel in this case may not inform witnesses who have not yet testified at the trial of the content of any earlier testimony. Defendant Plunkett stated at the hearing that he would like the court to extend this prohibition to case agents and, in fact, prohibit case agents from having contact with or discussing the case with witnesses during the trial. The government points out, however, that case agents typically assist counsel for the government during trial with witness preparation and may even transport witnesses to the courtroom. In order to balance these concerns, the court will require case agents to refrain from discussing the case with witnesses when counsel is not present while the witnesses remain sequestered.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER:      This ___ day of August, 2005.

_____
United States District Judge