CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 1 5 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Case No. 4:04CR70083 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ANTHOINE PLUNKETT, | ) | By: Hon. Glen E. Conrad |
| | ) | United States District Judge |
| Defendant. | ) | |

This case is before the court on defendant's motions for a new trial based on undisclosed Brady material. The defendant's motions claim that codefendant Darel Keith Taylor's statements during the investigation and codefendant Lanny Benjamin Bodkins' negotiations with the government had not been disclosed prior to the trial. For the following reasons, the court will deny the defendant's motions.

## BACKGROUND[1]

Lanny Benjamin Bodkins, Anthoine Plunkett, and Darel Keith Taylor were indicted by a grand jury on February 17, 2005, and charged with: conspiracy to travel in interstate commerce with the intent to commit murder for pecuniary gain; travel in interstate commerce with the intent to commit murder for pecuniary gain, aiding and abetting; conspiracy to travel in interstate commerce with the intent to commit interstate stalking; travel in interstate commerce with the intent to commit interstate stalking, aiding and abetting; and use of a firearm during and in relation to a crime of violence resulting in death, aiding and abetting. The United States filed Notices of Intent to Seek the Death Penalty as to Bodkins and Plunkett on February 17, 2005.

---

[1]Prior to the April 28, 2006 hearing, the parties entered into stipulations of evidence. The court will accept all relevant facts agreed upon by the parties as true.

Taylor had confessed to involvement in the murder of Tyree Wimbush in September of 2002, during investigation of the murder, and had entered into a plea agreement with the government. Pursuant to that agreement, he pled guilty to two counts of the indictment; conspiracy to travel in interstate commerce with the intent to commit murder for pecuniary gain (Count One), and use of a firearm during and in relation to a crime of violence resulting in death, aiding and abetting (Count Five). Before the trial began, counsel for the government gave counsel for Plunkett a tape and transcript of a statement given by Taylor on September 19, 2002. This was the only statement from Taylor provided to counsel for Plunkett.

In the weeks prior to trial of the remaining defendants, the parties engaged in limited plea discussions. On August 12, 2005, Bodkins made a proffer to the government that yielded information that was substantial to the government's case. Prior to the proffer, Assistant United States Attorney Craig J. Jacobsen told Bodkins that Bodkins would have two options in regards to going to trial. Bodkins could either choose to testify at trial on his own behalf or choose not to testify at all. Jacobsen told Bodkins that he thought if Bodkins told the jury the truth, it was his opinion that the jury would have a much more difficult time imposing the death penalty. At the proffer, Bodkins gave the government attorneys information concerning a Tennessee telephone number. The number, which Bodkins had originally said was his girlfriend's, received a call from Plunkett's mother's telephone card at 2:47 a.m. on July 23, 1999, several hours after the Wimbush murder. As a result of the information, the government renewed attempts to obtain the records for that telephone number, and questioned Taylor about the number. The information provided by Bodkins was very useful to the government in the prosecution of the case. The

telephone records were given to Plunkett's attorneys in advance of trial, but Plunkett was not informed of the proffer given by Bodkins prior to trial.

Bodkins was offered a plea agreement on August 14, 2005. The terms of the agreement provided that United States Attorney John Brownlee would recommend to the Department of Justice that Bodkins would receive a life sentence without the possibility of parole, if Bodkins would plead guilty and testify for the government at trial. Bodkins rejected the plea offer.

The trial began on August 15, 2005. Pursuant to his plea agreement, Taylor testified at trial. At the start of trial, both Plunkett and Bodkins were unavailable to be called as witnesses by the United States. During the trial, Bodkins advised the court that he would be available to be called as a witness. Plunkett was still not informed that Bodkins had been offered a plea agreement, however. Bodkins later took the stand on his own behalf, and testified in conformity with the government's theory of the case. On September 2, 2005, Bodkins and Plunkett were convicted by a jury on all counts of the indictment. The evidence at trial established that Plunkett hired Bodkins and Taylor to murder Tyree Wimbush.

During the penalty phase of the trial, the government moved to withdraw the death notices as to both defendants Bodkins and Plunkett. The court granted this motion. Bodkins and Plunkett now stand convicted of three capital offenses which are punishable only by life imprisonment without possibility of release and two offenses which are punishable by a term of years up to life imprisonment without possibility of release.

Taylor was sentenced on December 12, 2005. The court granted the government's motion for a downward departure for substantial assistance, sentencing Taylor to 180 months of

3

incarceration on Count One and 120 months of incarceration on Count Five, to run consecutively.

After the trial, Bodkins filed a Motion for Presentencing Relief, alleging that the United States breached an implied pretrial agreement with Bodkins to give him the same bargain as Taylor if he made a proffer of substantial information. Bodkins sought enforcement of the alleged agreement. The motion was denied by this court on April 27, 2006.

Defendant Plunkett filed a motion for new trial based on undisclosed Brady material ("First Brady Motion") on November 11, 2005, alleging that certain statements made by defendant Taylor were not disclosed to the defendant prior to trial. Plunkett filed another motion based on undisclosed Brady material on January 6, 2006 ("Third Brady Motion")[2], seeking a new trial because he had not been informed of Bodkins' negotiations with the government prior to his testimony. A hearing on the motions was held on April 28, 2006.

## ISSUES

The following issues are before the court:

(1) Whether the defendant is entitled to a new trial because he was not given certain statements made by codefendant Taylor, who testified at trial; and

(2) Whether the defendant is entitled to a new trial because he was not informed of negotiations that occurred between codefendant Bodkins and the government before Bodkins testified at trial.

---

[2]A second motion for new trial based on undisclosed Brady material was filed by counsel for Plunkett on January 6, 2006, and later withdrawn.

## DISCUSSION

In Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court held that a state violates a defendant's constitutional rights when it does not disclose prior to trial "evidence favorable to an accused ... where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. In order to implicate Brady, the evidence in question must be favorable to the accused, held by the government and not disclosed to the defendant, and material to guilt or punishment. Evidence is favorable to a defendant if it would exculpate the accused, or if it could be used to impeach a government witness. United States v. Ellis, 121 F.3d 908, 914 (4th Cir. 1997) (internal citations omitted). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433 (1995). A reasonable probability of a different outcome results when "the government's suppression undermines confidence in the outcome of the trial." Id. at 434.

I.  First Brady Motion

Plunkett claims that Taylor's testimony at trial and his September 19, 2002 audiotaped confession varied substantially from earlier statements admittedly made by Taylor in which he tried to downplay his role. The defendant argues that Taylor's initial report to investigators was an inconsistent statement that should have been made available to him prior to trial as impeachment evidence. Taylor described this report at trial, admitting that he was not completely honest with detectives at first and had tried to downplay his role in the murder.

The government responds that Taylor's statements downplaying his role were not exculpatory to Plunkett. According to the government, Taylor admitted to the inconsistencies

5

between statements at trial. The government urges that the statements were therefore not material, because Taylor's credibility was already impeached by the inconsistencies.

The court concludes that Taylor's statement to detectives, in which he attempted to downplay his role in the Wimbush murder, fulfilled the first two requirements of Brady; the statements were favorable to Plunkett and not disclosed to the defendant. Evidence that can be used to impeach a government witness is considered favorable under Brady. Ellis, 121 F.3d at 914 (internal citations omitted). As the first statement made by Taylor was inconsistent with his later account to investigators and his testimony at trial, the inconsistencies could have been used to impeach his credibility as a witness. In addition, the statements were not disclosed to Plunkett. The government has stipulated that Plunkett was not given any of Taylor's statements other than the audiotape and transcript from the September 19, 2002 interview.

However, the court concludes that the information withheld by the government, Taylor's statements downplaying his role in the murder, is not the type of evidence required to be disclosed under Brady, because the statements were not material. In Kyles v. Whitley, the Supreme Court described four considerations for a Brady materiality analysis. 514 U.S. at 434-37 (citing United States v. Bagley, 473 U.S. 667 (1985)). First, the Court held that proving materiality does not require the defendant to show, by a preponderance of the evidence, that the undisclosed evidence in question would have resulted in acquittal. 514 U.S. at 434. Instead, the defendant must show a "reasonable probability" of a different result, and that the suppression of evidence "undermine[d] confidence in the outcome of the trial." Id. Second, the Court recognized that a defendant is not required to show that discounting the undisclosed evidence would not have left sufficient evidence to convict the defendant. Id. at 434-35. Instead, the

6

defendant must demonstrate that the evidence "could be reasonably taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 435. Third, once the court has found a constitutional error in the suppression of evidence, a reviewing court does not need to perform a harmless error analysis. Id. at 434-36. Finally, the suppressed evidence must be considered collectively by the reviewing court. Id. at 436-37.

Plunkett argues that Taylor's prior statements were material because they revealed inconsistencies which could have been used to impeach Taylor's testimony at trial. However, the court concludes that the earlier statements were not material, in that disclosure and use would not have resulted in a reasonable probability that the jury would have reached a different verdict. Most significant to the court's conclusion is that the inconsistencies in Taylor's statements were revealed at trial. The United States Court of Appeals for the Fourth Circuit has held that there is no due process violation when Brady material is disclosed in time for effective use at trial. United States v. Smith Grading & Paving, Inc., 760 F.2d 527, 532 (4th Cir. 1985). Plunkett's counsel had the opportunity to thoroughly and effectively cross-examine Taylor about the inconsistent statements. See Def. Ex. 5 at 113.[3] Any information about Taylor's inconsistent stories was therefore not material and did not affect the jury's verdict, because the jury was informed about the inconsistencies during Taylor's testimony.

---

[3]Taylor's inconsistent statements were first raised during direct examination. See Def. Ex. 5 at 101-02. During cross-examination by Plunkett's counsel, the inconsistencies were again brought to the attention of the jury:
- Q. Were you misleading the detectives when they came to talk to you in this case?
- A. I tried to downplay my part in it; yes, sir, I did.
- Q. Would you characterize that as being misleading?
- A. Somewhat; yes, sir.

Id. at 113. Taylor was further questioned about the statements. See id. at 186-87, 204-07.

7

The Fourth Circuit addressed a set of similar facts in United States v. Ellis. In that case, the statement at issue was a report of an interview with a witness in which she had told investigators about two false suspects in a bank robbery. 121 F.3d at 914. In later statements and at trial, she properly identified her brother and another defendant as suspects. Id. at 916. At trial, the witness admitted that she had originally identified other suspects in her first statement. Id. The Court found that the witness' "prior statement supports her trial testimony that she had initially lied to the FBI investigators." Id. The Court therefore concluded that because the witness testified at trial and was cross-examined regarding her initial false statement, "disclosure of the actual [original statement] would not, within reasonable probability, have caused a different result." Id. This court is constrained to conclude that because Taylor was thoroughly cross-examined at trial by Plunkett's counsel regarding his initial false statement, the government's disclosure of Taylor's initial statement would not, within reasonable probability, have led to a different result.

The court further concludes that any other inconsistencies in Taylor's statements provided only cumulative impeachment of his trial testimony. The defendant refers to inconsistencies between Taylor's trial testimony and the statement that was given to Plunkett, such as Taylor's alleged contact with Plunkett before and after Wimbush's murder. Taylor's testimony at trial was impeached in several other ways, however. See Ellis, 121 F.3d at 917 (finding evidence to have only "cumulative impeachment" value because the witness was impeached in many other ways). First, Taylor admitted to the most significant inconsistency, his original downplaying of his role in the murder, during his testimony. Def. Ex. 5 at 101-02, 113. Any further inconsistencies were "insignificant" or "permutations" of this inconsistency. See Ellis, 121 F.3d

8

at 918. In addition, Taylor revealed that he was testifying pursuant to a plea agreement, and that he hoped to receive a substantial assistance motion from the government at the time of his sentencing. Def. Ex. 5 at 6-10, 107-10. Taylor also testified that he was a convicted felon. Id. The court's evaluation of the entire case and the effect of the suppressed evidence leads to the conclusion that there is not a reasonable probability that the jury would have reached a different result had Taylor's initial statement been disclosed. The court must therefore deny Plunkett's motion for a new trial on the basis of his claims under the First Brady Motion.[4]

II.  Third Brady Motion

Plunkett claims that the jury was led to believe that Bodkins, who testified at trial as to his own role and Plunkett's role in the Wimbush murder, had not been negotiating with the government about his possible assistance and testimony at trial. Plunkett argues that this false impression misled the jury as to the nature of the dealings between Bodkins and the government.

---

[4]The United States also contends that failure to disclose Taylor's statements did not implicate the rule pronounced in Jencks v. United States, 353 U.S. 657 (1957), codified in 18 U.S.C. § 3500. The statute provides that "the United States must produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500. The statute defines a statement as:
    (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
    (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
    (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.
Id. The United States argues that the only statement made by Taylor that falls within these parameters was the September 19, 2002 statement given to Bodkins and Plunkett. As the defendant does not argue that the statements sought fall under Jencks and 18 U.S.C. § 3500, the court finds it unnecessary to reach this issue.

9

According to Plunkett, the government's questioning led the jury to believe that Bodkins was testifying solely to do the right thing and bring comfort to the Wimbush family.

In response, the government points out that Bodkins was not called as a government witness. In addition, Plunkett's counsel had the opportunity to cross-examine Bodkins as to whether he was promised something by the government in return for his testimony.

The first requirement of Brady is that the undisclosed evidence must be "favorable" to the defendant. The Fourth Circuit has defined evidence as "favorable" if it can be used to impeach government witnesses. See Ellis, 121 F.3d at 914 (citing United States v. Trevino, 89 F.3d 187, 189 (4th Cir. 1996); Bagley, 473 U.S. at 682). Evidence tending to impeach a government witness by showing bias or interest can be very favorable to a defendant, sometimes making the difference between conviction and acquittal. Bagley, 473 U.S. at 682.

In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court found that an understanding or agreement with a government witness as to future prosecution should have been revealed to the jury. Id. at 154-55. The information was important to the witness' credibility, and therefore an important issue in the case. Id. Any agreement Bodkins had with the government is therefore the type of information contemplated by Bagley and Giglio, inasmuch as it is abundantly clear that Bodkins' testimony played a significant role in the conviction of Plunkett. However, the court concludes that negotiations between Bodkins and the government did not have to be disclosed to Plunkett's counsel, as Bodkins was not a government witness. Instead, Bodkins testified on his own behalf and the government did not have to disclose the plea negotiations. See Ellis, 121 F.3d at 914 ("[e]vidence is 'favorable' ... where it can be used to impeach government witnesses") (emphasis added).

10

In addition, evidence must be disclosed only if it was unavailable to the defendant. The court concludes that the information about Bodkins' negotiations with the government was available to Plunkett. It is undisputed that the proffer made by Bodkins to the government was available to Plunkett <u>before</u> Bodkins testified on his own behalf. Plunkett therefore had notice that Bodkins was dealing with the government. The court concludes that this information was not unavailable to Plunkett, and disclosure of the evidence was not required under <u>Brady</u>.

The defendant also claims that the failure of the government to disclose dealings between Bodkins and the government was material. The defendant argues that this failure to disclose was especially significant, given the government attorney's suggestions to Bodkins as to appropriate trial strategy. According to Plunkett, the jury was misled as to Bodkins' motivation for testifying and there was a reasonable probability that the misleading testimony affected the judgment of the jury. However, the court concludes that information about Bodkins' negotiations with the government did not fall under <u>Brady</u> because the information was not material. Plunkett has not shown that disclosure of this evidence would have created a reasonable probability of a different result, or that the suppression undermined confidence in the outcome of the trial. There has been no due process violation because evidence of the negotiations was disclosed in time for effective use at trial. <u>See</u> <u>Smith Grading & Paving</u>, 760 F.2d at 532. During Bodkins' testimony, the jury was informed that Bodkins had attempted to make a deal with the government and that the government had not given Bodkins what he had requested in return. Def. Ex. 12 at 62-63, 64-65.[5] Further disclosure by the government of negotiations between Bodkins and the government

---

[5]The following exchange took place during cross-examination of Bodkins by Plunkett's counsel:
Q. Let's talk about Friday, the 12th of August–

11

was therefore not required under Brady, as it was not material. The unavailability of all the details of the negotiations did not result in a reasonable probability that the jury would have reached a different result if more information about the negotiations had been disclosed.

The court concludes that any failure of the government to disclose the information about Bodkins' negotiations does not entitle Plunkett to a new trial under Brady; Bodkins was not a government witness, information about his negotiations was available to Plunkett, and Plunkett's counsel in fact used that information effectively at trial.

---

> A. Yes, sir.
> Q. –when you made your so-called proffer–
> A. Yes.
> Q. –to the detectives and the government. You were trying to cut a deal, weren't you?
> A. Yes, sir.
> Q. You were trying to get the same deal Keith Taylor got, correct?
> A. I believe it was the same deal that was offered to all the defendants.
> Q. You were trying to get the deal Keith Taylor got, were you not?
> A. I was trying to–I was trying to get the same deal that was offered to the two other defendants in this case that was not yet offered to me, yes, sir, you're correct.
> Q. So you were trying to get a deal.
> A. Yes, sir.
> Q. And to do that, you had to make a proffer, right?
> A. Yes, sir....
>
> Q. And your lawyers are still pushing this deal for you, aren't they?
> A. I believe so, yes, sir.
> Q. And so it's critical to you that you achieve the status of both having acceptance of responsibility and substantial assistance in this case in order for them to continue to make those arguments, isn't it, whether the government ever accepts that or not, and I'm not suggesting that the government has?
> A. Right.
> Q. But to ever have any hope of that happening, you have to have both acceptance of responsibility and substantial assistance, don't you?
> A. I believe that's true, yes, sir.

Def. Ex. 12 at 62-63, 64-65, 67.

12

Due to the seriousness of an assertion that the government allowed the use of false testimony during trial, a defendant must satisfy a lesser standard of materiality than the Brady "reasonable probability" standard to receive a new trial for this type of claim. Defendant Plunkett also proposes that the failure of the government to disclose information about its dealings with Bodkins should be examined under the lesser standard of materiality set forth by the Supreme Court in Napue v. Illinois, 360 U.S. 264 (1959). Napue held that a court must grant a new trial if the government knowingly allowed a witness to perjure himself if "the false testimony could ... in any reasonable likelihood have affected the judgment of the jury." 360 U.S. at 271. In that case, a witness being questioned by a government attorney stated that he had received no promise of consideration in return for his testimony, although the government attorney had promised him consideration. Id. at 265. The lesser standard for materiality set forth in Napue also applies if the government allows false evidence to go uncorrected, even if the government did not originally solicit the evidence. United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987). The defendant claims that the government was under an obligation to disclose that it had extended a plea offer to Bodkins and that Bodkins anticipated favorable treatment as a result of his proffer. According to the defendant, there is a reasonable likelihood that evidence of an actual plea offer could have affected the jury's assessment of Bodkins' credibility.

To prove a constitutional violation of the type considered in Napue, the defendant must demonstrate that: (1) Bodkins testified falsely; (2) the government knew the testimony was false; and (3) the testimony was material. United States v. Mason, 293 F.3d 826, 828 (5th Cir. 2002) (citing Giglio, 405 U.S. at 153). The court concludes that Bodkins' testimony about his negotiations with the government did not give rise to the type of constitutional violation

13

contemplated under Napue, because Bodkins did not testify falsely. At trial, during direct examination by his counsel, Bodkins revealed that he met with the Assistant United States Attorneys and disclosed that phone records showed a connection between Taylor, Plunkett, and himself. Def. Ex. 12 at 48. Bodkins also responded to a question saying he tried to do the right thing, "strictly for the Wimbush family and nobody else." Id. at 49. During cross-examination by counsel for Plunkett, Bodkins provided further information about his dealings with the government. He revealed that he made a proffer to the government, and had tried to get a deal. Id. at 62-63. Bodkins also testified that his lawyers were still pushing for the deal, and that he would need substantial assistance and acceptance of responsibility if he ever hoped to receive such a deal. Id. at 64-65. In response to further questioning from the government, Bodkins said it had been his understanding that he would receive a substantial assistance motion if he gave new and important information to the government, but "the bargain was not held up on [the government's] end." Id. at 67. Bodkins further testified that no representative of the government told him that he would receive a sentence of less than death or life at that time. Id. at 67.

The court finds that this line of questioning accurately represented the understandings of defendant Bodkins and the government attorneys at the time of the trial, and that Bodkins did not testify falsely. Although Bodkins had been offered a plea agreement for a term of life, he rejected the agreement and was hoping to receive an offer for a term of years. Further, the court concludes that the rejection of the plea agreement was not material, and that the failure to disclose the offer and rejection did not create "any reasonable likelihood" that the judgment of the jury would have been affected. The jury was told of Bodkins' negotiations with the government and Bodkins' continuing hope that he would be granted substantial assistance. This

14

information shaped the jury's assessment of Bodkins' credibility, and the fact that Bodkins had rejected an offer of a life sentence could not have added anything further to this assessment.

The court therefore concludes that Bodkins did not testify falsely, and that the information regarding the rejected plea agreement was not material. The unavailability of this information did not result in a reasonable likelihood that the jury's assessment would have been affected, and Plunkett's request for a new trial will therefore be denied.

## CONCLUSION

The court concludes that there was no duty under Brady to disclose to Plunkett the statements made by defendant Taylor that were inconsistent with his later statement that was produced. Likewise, the court concludes that the rule in Brady did not mandate disclosure of all details of the pretrial negotiations between Bodkins and the government. Finally, the court concludes that Bodkins did not testify falsely so as to implicate the rule in Napue. The defendant's motions seeking a new trial must therefore be denied.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 13th day of May, 2006.

*[signature]*

United States District Judge