CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 06 2011

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

ANTHOINE PLUNKETT,      )
           )    Criminal Action No. 4:04-cr-70083
    Petitioner,        )    Civil Action No. 4:09-cv-80205
           )
v.                 )    **MEMORANDUM OPINION**
           )
UNITED STATES OF AMERICA,    )    By: Hon. Glen E. Conrad
           )    Chief United States District Judge
    Respondent.      )

      Anthoine Plunkett, a federal inmate serving a life sentence for his convictions in connection

with his role in a murder for hire conspiracy, brings this Motion to Vacate, Set Aside, or Correct

Sentence pursuant to 28 U.S.C. § 2255. Plunkett is proceeding pro se. After the government filed a

motion to dismiss his petition, Plunkett responded, making the matter ripe for determination. For

the reasons that follow, the court concludes that the government's motion must be granted.

## Background

      Many of the facts pertaining to this petition have been recounted elsewhere. See United

States v. Bodkins, 274 F. App'x 294, 295-297 (4th Cir. 2008) (unpublished). In short, on

September 2, 2005, a jury found that Plunkett had hired Lanny Benjamin Bodkins and Darel Keith

Taylor to murder Tyree Wimbush in July of 1999. At the time, Plunkett believed that Wimbush

was a confidential informant for local drug investigators and sought to stifle or punish him. Taylor

confessed his role in the murder in September of 2002. The government subsequently brought

capital murder charges against Plunkett and Bodkins, while Taylor pled guilty and testified against

both Plunkett and Bodkins at trial.

      During the guilt phase of the trial, both Plunkett and Bodkins took the stand. Plunkett

denied all involvement in the scheme, while Bodkins—who had made several attempts to procure a

plea deal on terms that were similar to those previously offered to Taylor and Plunkett—admitted his role in the conspiracy, giving detailed evidence as to his and Plunkett's guilt. Plunkett and Bodkins were subsequently convicted by jury on all counts of the indictment; namely, conspiracy to travel in interstate commerce to commit murder for pecuniary gain (Count One), interstate travel to commit murder for pecuniary gain (Count Two), conspiracy to travel in interstate commerce to commit interstate stalking (Count Three), travel in interstate commerce to commit interstate stalking (Count Four), and using a firearm during and in relation to a crime of violence that resulted in death (Count Five).

After the convictions, the government withdrew the death notices as to both Plunkett and Bodkins. After additional post-trial motions were ruled on, the court sentenced both of them to life in prison. Both Plunkett and Bodkins appealed aspects of their convictions and sentences, but the court's rulings were upheld. See Bodkins, 274 F. App'x at 298-302. Plunkett unsuccessfully sought certiorari in the Supreme Court of the United States, after which he timely filed this petition.

Plunkett's § 2255 petition asserts a variety of claims, which, for purposes of clarity, the court will organize and refer to as follows:

1.    Ineffective assistance of trial counsel (conduct prior to trial).
    Claim 1(a):    Failure to challenge violation of Plunkett's statutory speedy trial rights.
    Claim 1(b):    Failure to challenge violation of Plunkett's Sixth Amendment speedy trial rights.
    Claim 1(c):    Failure to properly investigate and prepare for trial.
    Claim 1(d):    Violation of attorney-client privilege through inadvertent disclosure to a co-defendant of a plea agreement offered to Plunkett by the government.
    Claim 1(e):    Failure to challenge the indictment as multiplicitous.

2.    Denial of Fifth Amendment right to a fair trial due to government's misconduct.
    Claim 2(a):    Withholding evidence of the contents of Wimbush's pants pocket

|  |  | until the middle of the trial. |
|---|---|---|
| | Claim 2(b): | Withholding the fact that the government had offered Bodkins a plea offer and received a proffer. |
| | Claim 2(c): | Withholding Taylor's phone records until the middle of jury selection. |
| | Claim 2(d): | Altering Detective Wallace's affidavit to read "drug deal" rather than "bad drug deal." |
| | Claim 2(e): | Disappearance of two pagers which had been recovered at the crime scene. |
| | Claim 2(f): | Alteration of taped recording of Taylor's confession to excise ten minutes of the recording. |
| | Claim 2(g): | Causing James Morrell and a drug expert witness to refuse to testify on Plunkett's behalf by threatening them with prosecution if they testified. |
| | Claim 2(h): | Pointing out Morrell's failure to testify in the government's closing remarks, even though Morrell's absence had been obtained by its intimidation. |
| | Claim 2(i): | Failing to correct the false testimony given by Bodkins. |
| | Claim 2(j): | Use of information (i.e., the proffer obtained from Bodkins) which stemmed from a violation of an attorney-client privilege held by Plunkett. |

3. Ineffective assistance of trial counsel (conduct during trial).

| | Claim 3(a): | Failure to properly challenge the government's misconduct (as enumerated in Claim 2). |
|---|---|---|
| | Claim 3(b): | Failure to move for a mistrial or continuance based on the mid-trial discovery of the contents of Wimbush's pants pocket and/or Bodkins' testimony. |
| | Claim 3(c): | Failure to renew motion to sever after Bodkins' testimony. |
| | Claim 3(d): | Ineffective cross-examination of several government witnesses. |
| | Claim 3(e): | Admission of Plunkett's guilt in closing arguments. |
| | Claim 3(f): | Failure to challenge sufficiency of evidence with respect to Counts Three and Five, given the paucity of evidence as to the type of firearm used in the murder. |

4. Ineffective assistance of post-trial and appellate counsel.

| | Claim 4(a): | Failure to challenge violation of Plunkett's speedy trial rights. |
|---|---|---|
| | Claim 4(b): | Failure to challenge violation of Plunkett's attorney-client privilege. |
| | Claim 4(c): | Failure to challenge government misconduct (as enumerated in Claim 2). |
| | Claim 4(d): | Failure to challenge denial of request for severance. |
| | Claim 4(e): | Failure to argue that trial counsel was ineffective for admitting Plunkett's guilt in closing arguments. |

Claim 4(f):     Failure to challenge the indictment as multiplicitous.

Claim 4(g):     Failure to challenge sufficiency of evidence with respect to Counts 3 and 5.

## Discussion

Because Plunkett is proceeding pro se, his pleadings must be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). The requirement of liberal construction does not mean, however, that the court can ignore a clear failure in the pleading to "allege anything that remotely suggests a factual basis for the claim." Weller v. Department of Social Servs., 901 F.2d 387, 391 (4th Cir. 1990). Moreover, "judges are not . . . required to construct a [pro se] party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417-18 (7th Cir. 1993). Likewise, the court is not required to "attempt[] to divine the point" the litigant seeks to make about the specific facet of the criminal proceedings that he challenges. Id. Where the petitioner's motion, when viewed against the record, does not state a claim for relief, it should be dismissed. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## I.     Ineffective assistance of trial counsel (conduct prior to trial).

The first category of claims raised by Plunkett involve the conduct of his counsel prior to trial. To prove that his counsel's representation was so defective as to require that his conviction be vacated, Plunkett must satisfy both prongs of the two-part standard articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). He must first show that "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To do so, he "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotations omitted).

Significantly, counsel has no constitutional duty to raise every non-frivolous issue or

argument requested by a criminal defendant. Jones v. Barnes, 463 U.S. 745, 754 (1983). Moreover, as the Supreme Court has observed, "the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." Engle v. Isaac, 456 U.S. 107, 133-34 (1982). Thus, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it" does not amount to ineffective assistance of counsel. Murray v. Carrier, 477 U.S. 478, 486 (1986). See also United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999).

Second, Plunkett must show that counsel's defective performance resulted in prejudice; that is, he must demonstrate a "reasonable probability" that, but for counsel's unreasonable errors, the outcome would have been different. Strickland, 466 U.S. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." Id. If it is clear that Plunkett has not satisfied one prong of the Strickland test, the court need not inquire whether he has satisfied the other prong. Id. at 697.

A.      **Claim 1(a): Failure to challenge violation of Plunkett's statutory speedy trial rights.**

Plunkett first argues that trial counsel improperly failed to contest the continuance sought by the government on October 25, 2004. He is incorrect. Plunkett's trial counsel did, in fact, file an objection to the government's motion, asserting Plunkett's statutory speedy trial rights. (Docket No. 63.) Nor, in any event, was there any violation of the Speedy Trial Act, for the reasons discussed below with respect to Claim 4(a). Accordingly, Plunkett's right to counsel was not violated with respect to the concerns related in Claim 1(a).

**B.    Claim 1(b): Failure to challenge violation of Plunkett's Sixth Amendment speedy trial rights.**

It is true, on the other hand, that Plunkett's trial counsel never raised Sixth Amendment concerns with the continuance sought by the government on October 25, 2004. The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy trial and public trial." U.S. Const. amend. VI. In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court set forth four factors to determine whether the right to a speedy trial has been violated: (1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant. Id. at 530. No one factor constitutes a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Id. at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Id.

After assessing the Barker factors as they relate to this case, the court cannot conclude that Plunkett's trial counsel was constitutionally ineffective in failing to raise his Sixth Amendment speedy trial rights before the trial court. Strickland, 466 U.S. at 694. The government concedes that the 13-month interim between indictment and trial in this case cuts against it with respect to the first Barker factor. But see Barker, 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."). It also assumes that the third Barker factor cuts against it, given Plunkett's assertion that he repeatedly requested trial counsel to make such an argument. (Resp. Br. at 16.)

The second Barker factor, however, favors the government. "[F]ocusing on the intent of the prosecution," this factor weighs against the defendant where the reasons for delay are valid or

neutral, as opposed to stemming from prosecutorial misconduct or bad intent. United States v. Hall, 551 F.3d 257, 272 (4th Cir. 2009). Valid bases for delay include complicated prosecutions involving complex conspiracy charges or lengthy pre-trial proceedings largely attributable to defense motions. Id. In this case, Plunkett argues that the government's bad intent is identifiable by virtue of the fact that it never believed that the death penalty would actually be imposed against the defendants. (Pet. Resp. at 11.) Thus, seeking death penalty certification was, according to Plunkett, simply a guise in order to intimidate Bodkins and Plunkett into turning on each other or otherwise pleading guilty. Even according to Plunkett's construction of events, however, the pre-trial delay was merely concomitant to an intent which purportedly sought not delay inasmuch as intimidation. The third Barker factor therefore favors the government.

Finally, prejudice, the fourth Barker factor, also weighs against the defendant. Of the three possible areas of prejudice identified in connection with this factor, the most serious is the possibility that the defense was impaired. Hall, 551 F.3d at 273. Plunkett argues that his defense was adversely affected in at least two ways: (1) his co-defendants eventually consented to testify against Plunkett at trial; and (2) Plunkett's counsel inadvertently divulged his plea offer to Bodkins, resulting in Bodkins' damaging eleventh-hour revelation of critical telephone records to the government. As is evident from Barker, however, the type of prejudice primarily deplored by this factor is that which renders a defendant unable "adequately to prepare his case" as a result of pre-trial delay, such as would occur if defense witnesses or exculpatory evidence disappeared in the meantime. Barker, 407 U.S. at 532. Plunkett, by contrast, complains only that the delay fortuitously advantaged the prosecution, not that it actively hampered his defense. In fact, it is quite clear that the continuance granted by the court permitted his counsel to thoroughly prepare for the

nineteen-day trial that eventually took place. Indeed, insisting upon an earlier trial date may well have curtailed counsel's ability to fully prepare for it. Thus, the fourth Barker factor favors the government, as well.

Although it is true that affirmative proof of particularized prejudice is not essential to every speedy trial claim, Doggett v. United States, 505 U.S. 647, 655 (1992), the court cannot conclude that Plunkett's trial counsel was unconstitutionally ineffective in failing to make a Sixth Amendment speedy trial argument, given the mix of Barker factors denoted above. Not only must counsel's decision to forego a speedy trial motion in order to focus on other matters (such as using the extra time to prepare for trial) be presumed a sound strategic decision, Carrier, 477 U.S. at 486, but Plunkett has also been unable to demonstrate a "reasonable probability" that any speedy trial motion tendered by his counsel would have been granted. Strickland, 466 U.S. at 694. Claim 1(b) can therefore give Plunkett no relief.

C.    **Claim 1(c): Failure to properly investigate and prepare for trial.**

Plunkett next claims that his trial counsel's performance was "outside the wide range of professionally competent assistance" because he failed to locate and call several witnesses on Plunkett's behalf at trial. Nevertheless, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Yarbrough v. Johnson, 520 F.3d 329, 338 (4th Cir. 2008) (quoting Strickland, 466 U.S. at 691). Here, Plunkett only speculates as to what the testimony of James Cobb, Doug Littlejohn, and Brian Turpin would have been. Plunkett touts the testimony of James Morrell as critical, even though it would have consisted only of the same flat contradiction of Bodkins' and Taylor's testimony that the jury had heard from Plunkett. Finally, the

testimony of Stone and Officer Creasy would have been simply cumulative, given that the jury already had evidence before it regarding Wimbush's propensity for selling fake crack and the fact that two pagers were recovered from the crime scene.

Under these circumstances, the court is convinced that Plunkett has not demonstrated that counsel's decision not to call these witnesses was deficient, nor that Plunkett would have been acquitted, in all reasonable probability, had the jury heard the testimony of which he claims to have been deprived. See Bodkins, 274 F. App'x at 298 (agreeing that Plunkett's convictions were "amply established" by the evidence adduced at trial). Again, the testimony that purportedly would have been offered by each of these witnesses would have been largely duplicative. Accordingly, Claim 1(c) can give Plunkett no relief. Strickland, 466 U.S. at 694.

### D.    Claim 1(d): Violation of attorney-client privilege through inadvertent disclosure to a co-defendant of a plea agreement offered to Plunkett by the government.

Plunkett next seeks habeas relief based on the events leading up to Bodkins' eleventh-hour proffer, which are essentially as follows: On or about July 22, 2005, Plunkett's counsel, Roger Groot, sent an email to Bodkins' counsel. Attached to the bottom of that email was an email chain reflecting correspondence between Groot and one of the attorneys for the government pertaining to the terms of a plea offer that the government had offered to Plunkett but had not offered to Bodkins. Upon receiving the email, Bodkins' counsel entered into concerted efforts to obtain a similar plea offer for Bodkins. All to no avail, however: the government refused to extend similar terms to Bodkins, but indicated its willingness to receive a proffer. In an attempt to obtain a plea deal comparable to that offered to Plunkett and Taylor, Bodkins gave a proffer in which he revealed that certain phone records documented a phone call made by Plunkett to Taylor almost

immediately after Plunkett learned of Wimbush's death. Bodkins also testified at trial, fully admitting the role he played in the murder and detailing Plunkett's involvement in it, as well. (Docket No. 875-7.)

The government is of course correct that these circumstances did not involve a violation of the attorney-client privilege. The attorney-client privilege protects only confidential communications between an attorney and his client. In re Grand Jury Subpoena, 341 F.3d 331, 335 (4th Cir. 2003). The communications at stake here were patently non-confidential inasmuch as they contained discussions between the government and Plunkett's attorney, not discussions between Plunkett and his attorney. See id. The government, after all, was perfectly free to tell Bodkins each and every detail about the terms that it had offered to Plunkett if it wanted to. Moreover, even where the privilege does apply, it may under some circumstances be waived by an attorney's inadvertent disclosure of the communications at issue. Bittaker v. Woodford, 331 F.3d 715, 720 n. 4 (9th Cir. 2003); In re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir. 1984).

Of course, whether the communications were privileged is somewhat irrelevant to the question at hand; namely, whether Groot's conduct comprised unconstitutionally ineffective assistance of counsel. While an inadvertent disclosure can hardly be called a "strategy," reasonable or otherwise, Strickland, 466 U.S. at 689, the court is nonetheless not convinced that Plunkett has demonstrated the requisite prejudice. See also Engle, 456 U.S. at 133-34 (the Sixth Amendment guarantees only a competent attorney, not a perfect one). To be sure—and contrary to the government's contentions—Bodkins' decision to proffer does indeed appear to have been causally linked to his counsel's discovery, via the email, that the government was potentially willing to offer pleas contemplating a sentence less than life imprisonment. And there is no dispute that

Bodkins' proffer gave the government an important piece of evidence on the very eve of trial; namely, documentary proof that Plunkett placed a phone call to Taylor almost immediately after hearing that the murder had taken place.

Nevertheless, a veritable welter of evidence proving Plunkett's guilt was introduced at trial that had nothing to do with Bodkins' proffer, Bodkins' trial testimony, or the documentary evidence of the phone call. Most damagingly, Taylor testified against Plunkett, going into lengthy detail about Plunkett's role in soliciting and planning the murder. (Docket No. 875-2.) Taylor also testified that Plunkett had called him after learning that Wimbush had been killed and told him that Plunkett would pay him at a later date. (Docket No. 875-2 at 77, 82.) Although Taylor's testimony was bolstered by the introduction into evidence of documentary proof that the calls had occurred, his testimony alone was sufficient for the jury to find that Plunkett had contacted Bodkins and Taylor after the murder, with full knowledge of what had occurred. See also Docket No. 875-2 at 66, 67.

In addition to Taylor's testimony comprehensively laying out Plunkett's role in the murder for hire scheme, the jury heard evidence linking Plunkett to the murder from Talia Chandler, Michele Meekins, Shelby Hill, Felix Cobbs, and Monique Guillory. Both Meekins and Cobbs explicitly corroborated crucial portions of Taylor's testimony, including the fact that Plunkett wanted to kill Wimbush because he believed that Wimbush was an informant and that Plunkett didn't deny involvement in the murder after it occurred. See, e.g., Docket No. 875-3 at 13-15, 63, 67, 70-73. Plunkett also testified on his own behalf, though largely to his detriment. See Docket No. 875-15 at 3-63. Plunkett's testimony confirmed that he knew Taylor and Bodkins, that he had been trying to determine who had been the confidential informant leading to the raid on his drug

house, that he had called Taylor immediately after learning of the murder, and that he had

continued to sell drugs to Taylor after learning that Taylor was in some way connected to the

murder of Wimbush, whom he referred to as a good friend. See Docket No. 875-15.

Plunkett now posits, against this onslaught of evidence, that there is a reasonable

probability that, had Bodkins kept silent and the government not uncovered documentary proof of

the phone call between Plunkett and Taylor on the night of the murder, the jury would not have

convicted him. The court cannot agree. Compared to the rest of the evidence adduced against

Plunkett in this case, the evidence he now challenges was largely cumulative. Because Plunkett has

not carried his burden of demonstrating prejudice as a result of the inadvertent disclosure of the

plea agreement to counsel for his co-defendant, he is not entitled to relief on Claim 1(d).

Strickland, 466 U.S. at 694.

### E.    Claim 1(e): Failure to challenge the indictment as multiplicitous.

Plunkett also takes umbrage with his trial counsel for failing to challenge his indictment as

multiplicitous. But a review of the record shows good reason for counsel's decision not to

challenge the indictment on this basis. Simply stated, the indictment was not so flawed. An

indictment is multiplicitous when it charges a single offense in multiple counts, thereby subjecting

a defendant to the risk of multiple sentences for a single offense, in violation of the Double

Jeopardy Clause of the Fifth Amendment. United States v. Goodine, 400 F.3d 202, 207 (4th Cir.

2005). The Double Jeopardy Clause is not violated, however, when an indictment has charged

multiple statutory offenses arising from a single act, as long as each charge requires proof of a fact

that the others do not. Blockburger v. United States, 284 U.S. 299, 304 (1932). Thus, a single

conspiracy can give rise to distinct offenses under separate statutes without violating the Double

Jeopardy Clause. <u>Albernaz v. United States</u>, 450 U.S. 333, 344 n. 3 (1981).

These principles, applied to the counts leveled against Plunkett in this case, compel the conclusion that the superseding indictment was not multiplicitous. Count One required the government to prove that Plunkett conspired to commit murder for hire, in violation of 18 U.S.C. § 1958(a), while Count Two required the government to prove that Plunkett actually committed and aided and abetted murder for hire. Proof of aiding and abetting was not required for a conviction on Count One, and proof of conspiracy was not required for a conviction on Count Two. It is well-settled that a conspiracy does not merge with the completed offense. <u>United States v. Bobo</u>, 477 F.2d 974, 986 (4th Cir. 1973). Plunkett's convictions on both counts therefore do not violate the Double Jeopardy Clause. <u>Id</u>.

Counts Three and Four similarly charged a conspiracy to commit interstate stalking and the actual commission of interstate stalking, respectively, in violation of 18 U.S.C. §§ 371 and 2261A(1). Counts Three and Four therefore each required proof of an element that the other did not.

Count Five, for its part, required proof that Plunkett aided and abetted the knowing use of a firearm during a crime of violence, resulting in the premeditated murder of Wimbush, in violation of 18 U.S.C. §§ 924(c)(1) and 924(j). None of the other counts required proof of any of these elements, and each of the other counts required proof of some fact that Count Five did not. <u>See also</u> 18 U.S.C. § 924(c)(1)(A) (providing that a defendant using a firearm shall receive punishment "in addition to the punishment provided for" the predicate crime). Accordingly, Plunkett suffered no prejudice from his counsel's decision not to challenge the superseding indictment as multiplicitous and was not unconstitutionally deprived of his right to effective counsel. <u>Strickland</u>,

13

466 U.S. at 694.

## II.    Denial of Fifth Amendment right to a fair trial due to government's misconduct.

The second category of Plunkett's claims alleges that the government engaged in various

sorts of misconduct. It is not clear whether Plunkett raised these claims on direct appeal. To the

extent that he did not do so, they may each be procedurally defaulted and therefore barred from

habeas review. Bousley v. United States, 523 U.S. 614, 621-22 (1998); United States v. Pettiford,

612 F.3d 270, 280 (4th Cir. 2010); United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir.

1999). Nevertheless, the government has argued only that Claim 2(h) is defaulted. Of course,

"procedural default is normally a defense that the State is obligated to raise and preserve if it is not

to lose the right to assert the defense thereafter." Trest v. Cain, 522 U.S. 87, 89 (1997). Nor can the

court exercise its discretion to decide Plunkett's claims on the basis of procedural default despite

the government's failure to raise it as a defense, see Yeatts v. Angelone, 166 F.3d 255, 261 (4th

Cir. 1999), because the government has not provided the court with a copy of the briefs or

supplemental briefs that Plunkett filed on direct appeal. See United States v. Bodkins, 274 F.

App'x 294, 302 (4th Cir. 2008) (noting that Plunkett had raised several issues other than those

explicitly addressed in the opinion). Accordingly, each of Plunkett's claims will be addressed on

the merits below.

### A.    Claim 2(a): Withholding evidence of the contents of Wimbush's pants pocket until the middle of the trial.

The first claim of governmental misconduct that Plunkett alleges is the government's

alleged failure to turn over two pages from the Crime Scene Search Unit report which described

several items recovered from the pants Wimbush was wearing when he was shot. As a result,

Plunkett claims, he was blind-sided by the introduction of these items at trial, which occurred when Wimbush's pants were placed into evidence and the items were "discovered" in the left front pocket. (Pet. Reply Br. at 21.) According to Plunkett, this discovery was "so startling that the trial effectively stopped to allow the jury to inspect these items." (Pet. Reply Br. at 21.) Plunkett asserts that at least two of the items—plastic baggies, one with a corner torn off—would have corroborated his defense theory; namely, that Wimbush was killed by Bodkins unilaterally during a drug deal gone sour.

Generally, prosecutorial misconduct warrants reversal where the prosecutor's conduct has in fact been improper and has also prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. United States v. Golding, 168 F.3d 700, 702 (4th Cir. 1999). A Brady violation, as it appears that Plunkett urges here, occurs when the government fails to disclose prior to trial "evidence favorable to an accused . . . where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). Evidence is favorable if (1) it would exculpate the accused or (2) it could be employed to impeach a government witness. United States v. Ellis, 121 F.3d 908, 914 (4th Cir. 1997). Nevertheless, no due process violation occurs as long as Brady material is disclosed to a defendant in time for its effective use at trial. United States v. Smith Grading and Paving, Inc., 760 F.2d 527, 532 (4th Cir. 1985). Moreover, because a prosecutor has no duty to disclose information that is immaterial to guilt or punishment, "an individual alleging a Brady violation must demonstrate that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Spicer v. Roxbury Corr. Inst., 194 F.3d 547, 559 (4th Cir. 1999) (internal quotation marks and citations omitted). This inquiry does

not require the defendant to prove that he would have been acquitted if the suppressed evidence had been disclosed; rather, "the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Strickler v. Greene, 527 U.S. 263, 289 (1999) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)).

The court has reviewed the trial transcripts pertaining to Officer Rigney's testimony and can detect nothing to indicate either that Wimbush's pants were placed into evidence or that the contents of Wimbush's pocket were discovered, to Plunkett's shock, only mid-trial. See Docket No. 805 at 124-25, 135, 137-41. Plunkett's assertions that the exhibit list and transcripts of Rigney's testimony have been nefariously altered by the government are spurious. Compare Resp. Br. Ex. 17 with Docket No. 587.

To the extent that Plunkett alleges that the prosecution failed to disclose the items found in Wimbush's pocket prior to the trial, the court can only conclude that, even had Plunkett been deprived of pretrial notice regarding the items, his prior notice would not have shed the whole case in such a different light as to throw doubt upon the jury's verdict. Strickler, 527 U.S. at 289. As Plunkett himself urges, "the record is replete with objective evidence in support" of his theory that the murder occurred during a drug deal gone wrong. (Pet. Reply Br. at 23.) Plunkett relied on this theory extensively at trial; several other baggies of drugs were located in Wimbush's car; several witnesses testified to Wimbush's history of selling fake drugs; and the baggies found in Wimbush's pocket actually came into evidence at trial, allowing Plunkett to weave them into his narrative. It is therefore difficult to envision how the two baggies could have been used more effectively at trial by Plunkett than they already were. Although Plunkett theorizes that the baggies

could have borne some sort of exculpatory evidence (such as Bodkins' or Taylor's fingerprints), his mere speculation that the baggies would have assisted his defense does not, without more, entitle him to relief on a claim alleging prosecutorial misconduct. United States v. Roberts, 534 F.3d 560, 572 (7th Cir. 2008).

It turned out, of course, that the jury disbelieved Plunkett's defense theory, despite the nontrivial amount of evidence he had collected in support of it. Unfortunately for Plunkett, there is nothing to suggest that advance notice of the additional two baggies would have convinced the jury otherwise. Instead, the jury sided with the overwhelming and detailed evidence of Plunkett's involvement that was offered by numerous witnesses, including comprehensive confessions from both of his co-conspirators. Under these circumstances, the court cannot conclude that Plunkett's alleged lack of pre-trial notice regarding the contents of Wimbush's pants pocket would have cast the trial in a new light, had it been corrected. Strickler, 527 U.S. at 289. Claim 2(a) therefore must be dismissed.

**B.      Claim 2(b): Withholding the fact that the government had offered Bodkins a plea offer and received a proffer.**

Plunkett's argument that the government committed misconduct in failing to inform him of its plea negotiations with Bodkins has already been denied in his direct appeal to the Fourth Circuit. See Bodkins, 274 F. App'x at 300-01. Plunkett may not seek review of that determination here, as "the mere availability of habeas review cannot breathe new life into an issue that was raised and resolved by [the federal appellate court] on direct review." Nunes v. Ashcroft, 375 F.3d 805, 810 (9th Cir. 2004). See also Frady, 456 U.S. at 165 ("[A] collateral challenge may not do service for an appeal.").

**C.** **Claim 2(c): Withholding Taylor's phone records until the middle of jury selection.**

Plunkett also takes issue with the fact that the government did not disclose certain phone records pertaining to Taylor. As the court has already indicated, however, this belated disclosure did not materially prejudice Plunkett. See Docket No. 520. The government had disclosed the relevant phone number to Plunkett more than six months prior to trial, and, as Plunkett testified at trial, he was well aware that the number belonged to Taylor and that he had called it only three hours after the murder occurred. (Docket No. 875-15 at 14.) Contrary to Plunkett's assertions, therefore, he had at least six months in which to subpoena Taylor's phone records and investigate any leads stemming therefrom. As a result, the only shock that Plunkett suffered when the government turned over the records on August 17 and August 19, 2005, was his surprise that the government had been able to track down information that he already knew. Significantly, the court accommodated Plunkett's request to tweak his opening arguments and trial strategy in order to compensate for his newfound awareness of the extent of the government's knowledge. See Docket No. 520. The court therefore cannot conclude that the government's conduct in this instance warrants relief. Strickler, 527 U.S. at 289.

**D.** **Claim 2(d): Altering Detective Wallace's affidavit to read "drug deal" rather than "bad drug deal."**

Plunkett also maintains that a certain affidavit prepared by Detective Wallace was altered to rephrase a statement from Bodkins as referring to a "drug deal" that occurred prior to Wimbush's death rather than a "bad drug deal." It is not clear to which document Plunkett refers, and, despite the government's request that he identify which document he challenges, he has failed to do so. (Pet. Reply Br. at 32.) In any event, it is clear, for the reasons stated with respect to Claim 2(a),

that, given Plunkett's ability to fully flesh out his defense theory through other evidentiary sources, and given the substantial hillock of evidence flatly contradicting his theory, the court cannot conclude that Plunkett has suffered material prejudice from these circumstances. Strickler, 527 U.S. at 289.

E.   **Claim 2(e): Disappearance of two pagers which had been recovered at the crime scene.**

Plunkett next argues that the prosecution committed misconduct by intentionally refusing to produce or afford him access to two pagers that had been recovered from Wimbush at the scene of the crime. However, Plunkett cites no evidence supporting his assertion that the government intentionally hid the missing pagers from the defense or that they contained exculpatory information. Of course, mere speculation is insufficient to support relief on a claim alleging prosecutorial misconduct. Roberts, 534 F.3d at 572.

Moreover, counsel for Plunkett put Detective Carter on the stand largely for the purpose of pointing out to the jury that two pagers had been recovered at the scene but were later missing. See Docket No. 875-6 at 21; Docket No. 805 at 132. Because Plunkett has not given any indication of how the two pagers would have bolstered his case in a manner more palpable than the implications that his attorney was, in fact, able to draw from their unexplained absence, the circumstances underlying Claim 2(e) can give him no relief. Roberts, 534 F.3d at 572; Strickler, 527 U.S. at 289.

F.   **Claim 2(f): Alteration of taped recording of Taylor's confession to excise ten minutes of the recording.**

Plunkett also claims that the taped recording of Taylor's confession was edited to excise ten minutes of the recording. Refusing to countenance the government's explanation that the investigating agent had made a clerical error, Plunkett contends that the missing minutes were

deleted from the tape and that they contained exculpatory information about a drug deal gone wrong. He cites nothing other than his own conjecture to support this assertion. Of course, without some evidence other than mere speculation or conjecture that the allegedly-missing portion of the tape is exculpatory and suppressed by the government, his claim must fail. Roberts, 534 F.3d at 572; United States v. Williams-Davis, 90 F.3d 490, 514 (D.C. Cir. 1996). Moreover, counsel for Plunkett pointed out the discrepancy at trial. (Docket No. 875-12 at 8-13.) Accordingly, Plunkett is not entitled to relief with respect to Claim 2(f).

### G. Claim 2(g): Causing James Morrell and a drug expert witness to refuse to testify on Plunkett's behalf by threatening them with prosecution if they testified.

Plunkett next argues that the prosecution intimidated two defense witnesses, James Morrell and an unidentified drug expert, procuring their absence from trial by threatening to prosecute them for perjury if they testified on Plunkett's behalf. While a defendant's right to present a defense is not absolute, see United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982), Plunkett is correct that the government cannot substantially interfere with a defense witness's decision to testify. United States v. Serrano, 406 F.3d 1208, 1215 (10th Cir. 2005) (citing Webb v. Texas, 409 U.S. 95, 97-98 (1972) (per curiam)). Thus, several courts have held that, where the government threatens a defense witness with prosecution simply to prevent testimony that may be damaging to its case, such threats may under some circumstances rise to a level of intimidation that violates the defendant's right to present a defense. Golding, 168 F.3d at 703; United States v. Teague, 737 F.2d 378, 384 (4th Cir. 1984); United States v. Blackwell, 694 F.2d 1325, 1337 n. 14 (D.C. Cir. 1982); United States v. MacCloskey, 682 F.2d 468, 475 (4th Cir. 1982).

The mere fact that the government warns a defense witness of the consequences of

committing perjury, "even if carried out in a caustic manner," does not rise to the level of a constitutional violation. United States v. Williams, 205 F.3d 23, 29 (2d Cir. 2000) (quoting United States v. Hayward, 6 F.3d 1241, 1257 (7th Cir. 1993)). Some courts have also required that the defendant show that the government acted in bad faith and that the defendant was deprived of material and exculpatory evidence. See id.; compare Serrano, 406 F.3d at 1215-16. Nevertheless, the impact of any threats made by the prosecution may be exacerbated if the prosecution has "repeatedly called [the prospective defense witness's] failure to testify to the jury's attention and proceeded to argue that it was indicative of the falsity of the defendant's story." Golding, 168 F.3d at 703.

In this case, James Morrell has submitted an affidavit in which he attests that,

> During my questioning [by law enforcement] I was told that the authorities were certain that I had information about the death of Tyree Wimbush. On each occasion when I was interrogated I was threatened with prosecution, told that my every move would be followed, and that if I did not agree to "tow the line," I would be prosecuted as an accessory in the death of Tyree Wimbush.

(Pet. Ex. 5 at ¶ 12.)

During closing arguments, the prosecution commented on Morrell's failure to testify on Plunkett's behalf:

> James Morrell wasn't a witness. I don't know why. If there was ever a person better able to corroborate, to exonerate, to explain, to corroborate, to confirm what the defendant, Anthoine Plunkett, alone has told you, it's James Morrell. Where was he? Where is he? . . . Why didn't he testify? Because he was involved, that's why. And he knew if he came in here and testified, it would be all over. He couldn't support anything that Anthoine Plunkett told you yesterday.

(Docket No. 875-18 at 2-3.)

Notwithstanding the serious allegations leveled at the prosecution by Plunkett, it is clear to

the court that the prosecution's statements during closing arguments in this case do not warrant the stern rebuke given to the statements disapproved of in <u>Golding</u>. In <u>Golding</u>, the proposed defense witness intended to testify that she, not her husband, possessed the gun that was the basis of the felon-with-a-firearm charge that was pending against her husband. <u>Golding</u>, 168 F.3d at 703. Learning of the witness's intended testimony, the government threatened to prosecute her for a separate firearms offense if she told her tale on the witness stand. <u>Id</u>. The witness opted not to testify. Yet, knowing full well that the proposed defense witness declined to testify only because she buckled under the threat of prosecution, the prosecutor repeatedly claimed during her closing argument that there could be no reason for the witness' failure to support the defendant's story other than that the defendant's tale was patently false. <u>Id</u>. Here, by contrast, the prosecution made no such knowing misrepresentations. Instead, the prosecution's statements were specific and consistent with its previously-stated view that Morrell opted not to testify because he was afraid of being prosecuted for his role as an accessory to the crime charged against Plunkett. As a result, the statements made by the prosecution in this case cannot be deemed to raise the same degree of concern as those noted in <u>Golding</u>.

Finally, the court is not convinced that Morrell's absence from trial, even assuming that it was obtained through prosecutorial impropriety, "prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." <u>Golding</u>, 168 F.3d at 702. Morrell's affidavit nowhere claims that he would have actually testified at trial, but for the prosecution's alleged conduct. <u>See</u> Pet. Ex. 5. Nor can Plunkett seriously dispute the fact that Morrell had every incentive not to testify at trial, given that the prosecution believed him to be intimately involved in the murder plot.

Moreover, according to Plunkett, Morrell's testimony would have simply duplicated Plunkett's assertions that Plunkett did not meet with Bodkins or Taylor at specified times before and after the murder. As has been stressed, however, the evidence against Plunkett in this case "included direct testimony of his two co-conspirators, a plethora of corroborating documentary and testimonial evidence, and the testimony of [other witnesses] concerning incriminating statements" made by Plunkett. Williams, 205 F.3d at 31 (concluding, under similar circumstances, that any prosecutorial impropriety did not infect the proceedings so as to necessarily prevent a fair trial). Against the weight of this evidence, Plunkett has "offered nothing, beyond his conclusory assertions . . . that evinces a reasonable possibility that the alleged government intimidation affected the . . . verdict." Id. (quoting United States v. Pinto, 850 F.2d 927, 933 (2d Cir. 1988)). As a result, Claim 2(g) can afford Plunkett no relief.

**H.     Claim 2(h): Pointing out Morrell's failure to testify in the government's closing remarks, even though Morrell's absence had been obtained by its intimidation.**

Plunkett also lambasts the prosecution's repeated remarks during closing argument referring to Morrell's failure to testify at trial to corroborate Plunkett's tale. For the reasons outlined with respect to Claim 2(g), Plunkett is not entitled to relief on this ground.

**I.     Claim 2(i): Failing to correct the false testimony given by Bodkins.**

The arguments urged by Plunkett in favor of Claim 2(j) have already been denied in his direct appeal to the Fourth Circuit. See Bodkins, 274 F. App'x at 301. The court accordingly will not revisit them. Frady, 456 U.S. at 165.

**J.     Claim 2(j): Use of information (i.e., the proffer obtained from Bodkins) which stemmed from a violation of an attorney-client privilege held by Plunkett.**

Finally, Plunkett suggests that the government committed misconduct in using information

received during Bodkins' proffer because it was obtained in violation of an attorney-client privilege held by Plunkett. There are a number of reasons why this claim is without merit. First, as explained with respect to Claim 1(d), there was no violation of the attorney-client privilege. The government was free to negotiate with Bodkins as it wished. Second, even if Bodkins' disclosure was precipitated by the inadvertent disclosure of Plunkett's counsel, there is no evidence to conclude that the government was complicit in it; indeed, elsewhere in his petition, Plunkett lays the blame at the feet of his counsel, not the government, for Bodkins' eventual disclosure. Cf. United States v. White, 970 F.2d 328, 333 (7th Cir. 1992). Third, as explained with respect to Claim 1(d), Bodkins' testimony did not materially prejudice Plunkett, given the overwhelming evidence that had already been asserted against him in the government's case-in-chief. Claim 2(j) therefore affords Plunkett no relief.

## III. Ineffective assistance of trial counsel (conduct during trial).

### A. Claim 3(a): Failure to properly challenge the government's misconduct (as enumerated in Claim 2).

To the extent that Plunkett claims that his trial counsel was ineffective for failing to challenge the instances of governmental misconduct alleged in Claim 2, his petition must fail, given the court's holding that Plunkett suffered from no material prejudice with respect to any of the asserted areas of misconduct. As such, Plunkett certainly cannot carry the burden of demonstrating that the outcome of his trial would have been different, in all reasonable probability, had his counsel made the same arguments at trial. Strickland, 466 U.S. at 694.

**B. Claim 3(b): Failure to move for a mistrial or continuance based on the mid-trial discovery of the contents of Wimbush's pants pocket and/or Bodkins' testimony.**

Plunkett next chastises his trial counsel for failing to move for a mistrial or a continuance both at the time of the alleged mid-trial discovery in Wimbush's pocket of the baggies and chapstick and after Bodkins' devastating testimony. However, the decision to grant a motion for continuance or mistrial is committed to the trial court's discretion. United States v. Wallace, 515 F.3d 327, 330 (4th Cir. 2008); United States v. Williams, 445 F.3d 724, 738–39 (4th Cir. 2006). As Plunkett has not demonstrated compelling grounds for any such motion, there is no question that he has failed to demonstrate that he suffered the prejudice necessary for the survival of his ineffective assistance claim. Strickland, 466 U.S. at 689.

**C. Claim 3(c): Failure to renew motion to sever after Bodkins' testimony.**

Claim 3(c) alleges that Plunkett's trial counsel was ineffective for failing to renew his motion to sever Plunkett's trial after Bodkins testified. Plunkett essentially contends that Bodkins and Plunkett presented conflicting defenses, necessitating that their trial be severed.

"[B]arring special circumstances, individuals indicted together should be tried together." United States v. Brugman, 655 F.2d 540, 542 (4th Cir. 1981). Severance is warranted, however, where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). Nevertheless, a defendant seeking severance must articulate some specific ground of actual prejudice: "[I]t is insufficient to vaguely assert 'that a separate trial would offer a better chance of acquittal.'" United States v. Shealey, --- F.3d ----, 2011 WL 1549487, at *4 (4th Cir. Apr. 25, 2011) (slip op.) (quoting United States v. Reavis, 48 F.3d

763, 767 (4th Cir. 1995)).

The presentation of conflicting defenses or the desire of one defendant to exculpate himself by inculpating a co-defendant does not require severance. United States v. Najjar, 300 F.3d 466, 474 (4th Cir. 2002). Instead, "[t]here must be such a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other, or that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." Id. (citations omitted).

Plunkett contends that Bodkins' testimony essentially amounted to a non-defense, inasmuch as Bodkins was fully candid about his and Plunkett's role in the crime. Given that Plunkett insisted upon his innocence, the court agrees that their testimony was rather at cross-purposes. Nevertheless, as detailed with respect to Claim 1(d), "the independent evidence" of Plunkett's guilt "was so strong that any conflict in defenses cannot be said to have resulted" in his conviction. United States v. Ferguson, 778 F.2d 1017, 1020 (4th Cir. 1985).

This inquiry, moreover, is refracted through the deference due the trial strategy of Plunkett's counsel, who may have perceived a benefit in not renewing a motion to sever after Bodkins' testimony. See also Engle, 456 U.S. at 133-34 ("[T]he Constitution . . . does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); Carrier, 477 U.S. at 486 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it" does not amount to ineffective assistance of counsel.). Accordingly, Plunkett is not entitled to relief on Claim 3(c).

### D. Claim 3(d): Ineffective cross-examination of several government witnesses.

Plunkett also takes umbrage with the particular scope and efficacy of trial counsel's cross-examination of several government witnesses, charging that trial counsel's performance constituted ineffective assistance of counsel. Unfortunately for Plunkett, tactical decisions such as the scope and particular emphases of particular bouts of cross-examination are precisely the type of matters presumed to be within the core competence of an attorney. Strickland, 466 U.S. at 688. Plunkett has demonstrated nothing from which the court could conclude that his counsel's performance in this case was beyond the pale of the profession. Id. Accordingly, Claim 3(d) must be dismissed.

### E. Claim 3(e): Admission of Plunkett's guilt in closing arguments.

During closing arguments, Plunkett's counsel referred to Plunkett's sub-par performance on cross-examination as follows:

> I said it was our task to present [Plunkett's] case as effectively as we could and as professionally as we could, and we failed him in that yesterday afternoon. What happened yesterday afternoon during his cross-examination by Mr. Giorno should not have happened. Mr. Davis and I are responsible for that. I as his legal counsel am especially responsible and regret very much that it happened, and I will take responsibility for it.

(Docket No. 875-18 at 4.) Plunkett now contends that these statements amounted to an admission of Plunkett's guilt and constituted ineffective assistance of counsel.

To succeed on such a claim, however, Plunkett must overcome the presumption that, "under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689. Here, contrary to Plunkett's assertions, the challenged comments admit nothing about the charges against him. At worst, they indicate an admission that Plunkett had performed extremely poorly on cross-examination. In the court's view, counsel's comments

went to Plunkett's demeanor as a witness. Judging from the content and context of the remarks, it appears that Plunkett's counsel was attempting to deflect fault for Plunkett's poor performance onto counsel instead of onto Plunkett. While not every attorney may have made the same attempt in the same manner, Strickland, 466 U.S. at 689, the court cannot conclude that counsel's reasoned strategy to mitigate the self-inflicted harm caused by Plunkett's testimony was "below the wide range of professionally competent performance" required by the Sixth Amendment. United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004); United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004). Claim 3(e) must therefore be dismissed.

      F.      **Claim 3(f): Failure to challenge sufficiency of evidence with respect to Counts 3 and 5, given the paucity of evidence as to the type of firearm used in the murder.**

Plunkett also contends that his counsel was ineffective in failing to challenge the sufficiency of the evidence as to Counts Three and Five, given that no evidence at trial established that the firearm used to kill Wimbush was a 9 millimeter Ruger, as recited in the indictment. On this score, Plunkett is simply incorrect. Not only is the specific type of firearm a nonessential element of the offenses charged in this case, United States v. Redd, 161 F.3d 793, 796 (4th Cir. 1998), but several witnesses actually testified at trial that the gun used to kill Wimbush was a 9 millimeter Ruger. See, e.g., Docket No. 875-2 at 40. This eyewitness testimony alone is sufficient to support the jury's finding. Redd, 161 F.3d at 797. Claim 3(f) is therefore without merit.

## IV.    **Ineffective assistance of post-trial and appellate counsel.**

Plunkett also claims that the counsel appointed to him after the untimely death of his trial counsel was ineffective for failing to make several post-trial and appellate challenges. See Evitts v. Lucey, 469 U.S. 387, 396 (1985). Although Plunkett's Sixth Amendment right to effective counsel

continues to obtain on direct appeal, "appellate counsel is not required to raise an issue on appeal merely because it is not frivolous." Keel v. French, 162 F.3d 263, 272 (4th Cir. 1998). In fact, appellate counsel's decisions regarding which issues to argue on appeal are given significant deference when reviewed in a collateral proceeding. As the Fourth Circuit has explained in some detail,

> In applying [the Strickland test] to claims of ineffective assistance of counsel on appeal . . . , reviewing courts must accord appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Counsel is not obligated to assert all nonfrivolous issues on appeal, as "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). Indeed, "'[w]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751); see also Smith, 882 F.2d at 899 (counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims").

Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc).

## A.    Claim 4(a): Failure to challenge violation of Plunkett's speedy trial rights.

Against these considerations, Plunkett's attempt to demonstrate unconstitutionally ineffective assistance of counsel with respect to the court's November 5, 2004 order (Docket No. 71) must fail. For starters, Plunkett suffered no prejudice from his counsel's conduct because there was no violation of the Speedy Trial Act ("STA"). Under the STA, a continuance is permitted where, among other things, a case is so unusual and complex that it would be unreasonable to expect adequate preparation for both pretrial and trial proceedings within the established time limits, or the failure to grant the continuance would deny counsel for either party the reasonable

time necessary for effective preparation. 18 U.S.C. §§ 3161(h)(8)(B)(ii), (iv) (2004). Cf. 18 U.S.C. §§ 3161(h)(7)(B)(ii), (iv) (2010) (same).

Plunkett complains that the court's recitation of the pending death penalty certification (and the resultant increased case complexity) as grounds for the continuance was improper because the case had not yet been certified as death penalty eligible. Yet, as Plunkett recognizes, the STA "gives the district court discretion . . . to accommodate limited delays for case-specific needs." United States v. Henry, 538 F.3d 300, 303 (4th Cir. 2008) (quoting Zedner v. United States, 547 U.S. 489, 499 (2006). As in this case, of course, "case-specific" considerations include the knowledge of all parties that the government was actively seeking death penalty certification from the outset of the case. See, e.g., Docket Nos. 49, 50, 52. As events transpired, it became increasingly obvious that the court's suppositions as to the complexity posed by the case's capital nature were correct: the case was certified as death penalty eligible and generated numerous motions, orders, a nineteen-day jury trial, and substantial post-trial litigation. Under these circumstances, Plunkett suffered no STA violation; his ineffective assistance claim on that score must likewise fail.

Furthermore, as discussed with respect to Claim 1(b), the continuance here decried by Plunkett did not violate his Sixth Amendment speedy trial rights, either. Finally, Plunkett has demonstrated nothing to upset the presumption that appellate counsel considered the available arguments and raised only those issues which she deemed most likely to afford relief upon appeal. Bell, 236 F.3d at 164. Accordingly, the failure of his appellate counsel to pursue on appeal either of the arguments now noted by Plunkett cannot be deemed to have deprived Plunkett of effective assistance of counsel.

**B.** **Claim 4(b): Failure to challenge violation of Plunkett's attorney-client privilege.**

As explained with respect to Claim 1(d), the circumstances involving the disclosure to Bodkins of the government's plea offer to Plunkett raise no viable constitutional claim redounding to Plunkett's benefit. Plunkett therefore cannot be deemed to have suffered from ineffective assistance of counsel due to his counsel's failure to appeal this issue. Bell, 236 F.3d at 164.

**C.** **Claim 4(c): Failure to challenge government misconduct (as enumerated in Claim 2).**

As explained with respect to Claim 2, none of the alleged prosecutorial misconduct resulted in material prejudice to Plunkett. Plunkett therefore cannot be deemed to have suffered from ineffective assistance of counsel due to his counsel's failure to appeal this issue. Bell, 236 F.3d at 164.

**D.** **Claim 4(d): Failure to challenge denial of request for severance.**

As explained with respect to Claim 3(c), no severance was necessary in this case. Plunkett therefore cannot be deemed to have suffered from ineffective assistance of counsel due to his counsel's failure to raise this issue on appeal. Bell, 236 F.3d at 164.

**E.** **Claim 4(e): Failure to argue that trial counsel was ineffective for admitting Plunkett's guilt in closing arguments.**

As for Plunkett's claim that appellate counsel was ineffective for failing to urge on direct appeal that trial counsel's statements during closing remarks were ineffective, it fails not only for the reasons stated with respect to Claim 3(e), but also because an allegation of ineffective assistance of trial counsel is not properly raised on direct appeal unless the trial record "conclusively" establishes trial counsel's ineffectiveness. United States v. Richardson, 195 F.3d

192, 198 (4th Cir. 1999). As has been explained, trial counsel was not unconstitutionally ineffective, much less "conclusively" so. Claim 4(e) must therefore be dismissed.

### F.    Claim 4(f): Failure to challenge the indictment as multiplicitous.

As explained with respect to Claim 1(e), any challenge to the indictment as multiplicitous is without merit. Given the futility of such a claim, Plunkett cannot be deemed to have suffered from ineffective assistance of counsel for failing to file such a challenge. Strickland, 466 U.S. at 694.

### G.    Claim 4(g): Failure to challenge sufficiency of evidence with respect to Counts Three and Five.

As explained with respect to Claim 3(f), the challenge that Plunkett proposes, alleging insufficiency of the evidence as to Counts Three and Five, would be frivolous. Moreover, appellate counsel mounted a sufficiency of the evidence challenge against his convictions on Counts Three, Four, and Five which was much more nuanced than that which Plunkett proposes here. Under these circumstances, it cannot be the case that his appellate counsel was unconstitutionally ineffective. Bell, 236 F.3d at 164.

### Conclusion

For these reasons, the court concludes that the motion to dismiss must be granted. As a result, Plunkett's renewed motion for discovery (Docket No. 892) will be dismissed as moot.

The petitioner is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the circuit court of appeals or of this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a

constitutional right." Therefore, this court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal and seek a certificate of appealability from the United States Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 60 days of the date of the entry of the order dismissing his petition, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and to counsel of record for the government.

ENTER: This ___ day of June, 2011.

_____
Chief United States District Judge