CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED

SEP 1 2 2024

LAURA A. AUSTIN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 4:04-cr-70083 |
| v. | ) | |
| | ) | |
| ANTHOINE PLUNKETT, | ) | By: Michael F. Urbanski |
| Defendant/Petitioner. | ) | Chief United States District Judge |

## MEMORANDUM OPINION

Anthoine Plunkett, a federal inmate currently serving four life sentences, received authorization to file a successive motion under 28 U.S.C. § 2255 challenging the validity of his 18 U.S.C. § 924(j) conviction in light of United States v. Davis, 588 U.S. 445 (2019). The case is presently before the court on Plunkett's § 2255 motion, ECF No. 967, which includes the Davis claim and other claims challenging the validity of his convictions.[1] For the reasons set forth below, the motion is **GRANTED** with respect to the Davis claim. With respect to all other claims asserted in the § 2255 motion, the motion is **DENIED**.

### I.    Background

The following summary of the procedural history and underlying facts is drawn from the Fourth Circuit's opinion on Plunkett's direct appeal and other filings in the record. See United States v. Bodkins, 274 F. App'x 294 (4th Cir. 2008).

Plunkett was accused of hiring Lanny Bodkins and Keith Taylor to murder Tyree Wimbush. Id. at 295. The government's evidence revealed that each of these individuals used

---

[1] This case was originally assigned to United States District Judge Glen E. Conrad, who presided over Plunkett's trial, sentencing, and initial § 2255 motion. The case was transferred to the undersigned on May 12, 2021.

and sold drugs, and that Plunkett hired Bodkins and Taylor to murder Wimbush because Plunkett believed that Wimbush was a confidential informant for local drug investigators. Id. On July 22, 1999, Bodkins and Taylor drove from Johnson City, Tennessee, to Danville, Virginia, to kill Wimbush. Id. Bodkins fatally shot Wimbush three times. Id.

On February 17, 2005, a federal grand jury returned a superseding indictment charging Plunkett, Bodkins, and Taylor with the following offenses: conspiracy to travel in interstate commerce with the intent to commit murder for pecuniary gain, resulting in death, in violation of 18 U.S.C. § 1958(a) (Count One); travel in interstate commerce with the intent to commit murder for pecuniary gain, resulting in death, and aiding and abetting the same, in violation of 18 U.S.C. §§ 2, 1958(a) (Count Two); conspiracy to commit interstate stalking, in violation of 18 U.S.C. § 371 (Count Three); interstate stalking and aiding and abetting the same, in violation of 18 U.S.C. §§ 2, 2261A(1) (Count Four); and use of a firearm during and in relation to a crime of violence resulting in death and aiding and abetting the same, in violation of 18 U.S.C. §§ 2, 924(j) (Count Five). The superseding indictment identified "interstate stalking, in violation of Title 18, United States Code Section 2261A," as the predicate crime of violence to support the § 924(j) charge in Count Five. ECF No. 132 at 4.

During the murder investigation preceding the indictment, Taylor confessed to being involved in Wimbush's murder, and he agreed to plead guilty to Counts One and Five pursuant to a plea agreement. Bodkins, 274 F. App'x at 296. The government also engaged in plea discussions with Bodkins, who provided useful information to the government during a proffer session. Id. Ultimately, Bodkins rejected the government's plea offer, and he and Plunkett proceeded to trial. Id. at 296–97.

The trial began on August 15, 2005, and Taylor appeared as a witness for the government pursuant to his plea agreement. Taylor testified that he and Bodkins would travel from Johnson City to Danville to buy drugs from Plunkett and that Plunkett offered to pay them to kill Tyree Wimbush, who Plunkett believed was a "snitch." ECF No. 875-2 at 32, 43–44, 58. Taylor testified that he and Bodkins drove from Johnson City to Danville on July 22, 1999; that they located the man that Plunkett had previously identified as Wimbush; and that Bodkins shot Wimbush three times after Wimbush exited his vehicle and approached their vehicle. Id. at 60–73. While Taylor and Bodkins were driving back to Johnson City, Plunkett called and told them that he had been informed of Wimbush's killing and that he would "take care" of them in a few days. Id. at 77. Taylor subsequently called Plunkett on multiple occasions in an effort to be paid. Id. at 84–86, 95. After meeting with Plunkett on two occasions and being told that he did not have the money, Taylor "finally just gave up." Id. at 95, 98.

The government also elicited testimony from local residents who witnessed Wimbush's murder, including James Lewis Fitts. Fitts testified that he saw Wimbush exit a vehicle and walk toward another vehicle with Tennessee tags, and that he heard gunshots as Wimbush approached the other vehicle. ECF No. 805 at 51–52, 67. The other vehicle sped off, and just before Wimbush fell to the ground, Fitts heard Wimbush say that he had been hit or shot. Id. at 53–54.

On September 1, 2005, after the government rested its case, Bodkins took the stand on his own behalf and testified in conformity with the government's theory of the case. ECF No. 875-7. Bodkins testified that he agreed to kill Wimbush in exchange for being paid by

3

Plunkett; that he and Taylor drove from Johnson City to Danville on July 22, 1999, and located Wimbush; that he started shooting at Wimbush as Wimbush approached their vehicle; and that they drove off after he fired three shots. Id. at 31–33, 35, 39; see also id. at 9 (acknowledging that he killed Wimbush, that he was "hired by Antoine Plunkett to do that," and that he acted in conjunction with Taylor).

On September 2, 2005, the jury found Bodkins and Plunkett guilty on all counts. ECF Nos. 560 and 561. Prior to trial, the Attorney General authorized the death penalty for both defendants. During the penalty phase, however, the government announced that it would be moving to withdraw the death notices. ECF No. 586. That motion was granted on September 12, 2005. ECF No. 581.

Because the government withdrew the death notices, Counts One, Two, and Five each carried a mandatory sentence of life imprisonment. 18 U.S.C. § 1958(a); 18 U.S.C. § 924(j). Count Three carried a maximum term of imprisonment of five years. 18 U.S.C. § 371. And Count Four carried a sentence of "life or any term of years" if the offense resulted in the death of the victim; otherwise, absent another aggravating factor, the maximum penalty was five years. 18 U.S.C. § 2261(b).

Bodkins and Plunkett appeared for sentencing on June 12, 2006. ECF Nos. 746, 748. They received concurrent life sentences on Counts One, Two, and Four; a concurrent term of imprisonment of 60 months on Count Three; and a consecutive life sentence on Count Five. ECF No. 749, 751.

Bodkins and Plunkett appealed their convictions and sentences to the Fourth Circuit. On April 18, 2008, the court of appeals affirmed the convictions and sentences of each defendant. Bodkins, 274 F. App'x at 297–302.

Plunkett then filed a petition for a writ of certiorari in the Supreme Court of the United States seeking review of the Fourth Circuit's decision. The Supreme Court denied the petition on December 1, 2008. Plunkett v. United States, 555 U.S. 1050 (2008).

In December 2009, Plunkett moved to vacate his convictions and sentences under 28 U.S.C. § 2255. ECF No. 845. The petition asserted more than two dozen claims of ineffective assistance and prosecutorial misconduct. Among other claims, Plunkett alleged that the government had (1) excised part of the recording of Taylor's initial statement regarding the murders; (2) surprised the defense with previously undisclosed evidence found in the victim's pants pocket, including two plastic sandwich bags; (3) altered the trial exhibit list to cover up the late disclosure of that evidence; (4) inaccurately transcribed an investigator's trial testimony to disguise the defendants' shock at finding evidence in the victim's pants pocket during trial; and (5) withheld information regarding a plea offer made to Bodkins. See ECF No. 894 at 14–23 (addressing Plunkett's claims of prosecutorial misconduct). The § 2255 motion was denied on June 6, 2011, and on April 25, 2012, the Fourth Circuit denied a certificate of appealability and dismissed Plunkett's appeal. ECF Nos. 895, 903.

In April 2020, Plunkett filed a pro se motion that was construed and docketed as a motion to vacate under § 2255. See ECF Nos. 944, 948, 949. Based on evidence he had developed since his prior § 2255 motion, Plunkett claimed that the government (1) tampered with the trial exhibit list to hide the mid-trial discovery of evidence found in the victim's pants

5

pocket and inaccurately transcribed witness testimony about that evidence, and (2) altered a video recording and transcript of Taylor's initial statement about the murder. ECF No. 950 at 3. In support of these claims, Plunkett submitted a July 2016 affidavit from a forensic document examiner, Wendy Carlson, noting discrepancies that she interpreted as evidence that the trial exhibit list was tampered with or altered. Id. at 3–4 (citing ECF No. 949-3). Plunkett also submitted an April 2019 report by Barry G. Dickey, a forensic audio/visual analyst who examined a copy of a compact disc containing Taylor's initial statement and opined that "several anomalies exist on the digital copy that question it's [sic] reliability as an accurate, complete, and continuous representation of events." Id. at 4 (quoting ECF No. 949-4). Based on this and other evidence, Plunkett sought relief under Federal Rule of Civil Procedure 60(d)(3) based on the government's purported "fraud upon the court." Id.

On July 9, 2020, Plunkett's § 2255 motion was dismissed without prejudice as successive under 28 U.S.C. § 2255(h). ECF Nos. 950, 951. That decision was affirmed by the Fourth Circuit on April 1, 2021. See United States v. Plunkett, 841 F. App'x 623, 624 (4th Cir. 2021) ("Our review of the record confirms that the district court properly construed Plunkett's Rule 60(d) motion as a successive § 2255 motion over which it lacked jurisdiction because Plunkett failed to obtain prefiling authorization from this court.") (citing 28 U.S.C. §§ 2244(b)(3)(A), 2255(h)). The Fourth Circuit also construed Plunkett's notice of appeal as an application of to file a successive § 2255 motion. Id. Upon review, the Fourth Circuit concluded that Plunkett's claims did not meet the relevant standard under § 2255(h). Id. Accordingly, it denied authorization to file a successive § 2255 motion asserting the claims raised in that appeal. Id.

6

In the meantime, Plunkett filed a separate motion with the Fourth Circuit seeking authorization to file a successive § 2255 motion raising four grounds for relief. See ECF No. 966. Based on its review of the record, the Fourth Circuit concluded that Plunkett had "made a prima facie showing under 28 U.S.C. § 2255(h) as to one of his claims: that his conviction under 18 U.S.C. § 924(j) is invalid in light of United States v. Davis, 139 S. Ct. 2319 (2019) (holding 18 U.S.C. § 924(c)(3)(B) unconstitutionally vague)." Id. (citing In re Thomas, 988 F.3d 783, 789 (4th Cir. 2021) (holding that Davis announced a new rule of constitutional law that is retroactive to cases on collateral review)). As to the remainder of his proposed grounds for relief, the Fourth Circuit concluded that Plunkett had "not made the requisite showing." Id. Accordingly, Plunkett was granted authorization to file a second or successive § 2255 motion challenging the validity of his § 924(j) conviction but his motion was denied "as to all other claims." Id. Those claims include claims of "fraud upon the court," "prosecutorial misconduct," and "ineffective assistance of counsel (pre-trial) and (conduct during trial)," which are based on the same arguments raised in previous motions. See ECF No. 967 at 3–5.

By order entered August 4, 2021, the court served Plunkett's § 2255 motion on the United States Attorney for the Western District of Virginia and directed the government to answer or otherwise respond to Plunkett's Davis claim within sixty days. ECF No. 983. The order provided that the other claims asserted in the § 2255 motion would be dismissed pursuant to § 2255(h). Id.

On January 7, 2022, after receiving an extension of time, the government filed its initial response to Plunkett's § 2255 motion. ECF No. 997. In its initial response, the government conceded that Plunkett was entitled to relief under Davis. Id. at 10–11. Relying on the current

version of 18 U.S.C. § 2261A, the government indicated that it did "not contest Plunkett's claim that his interstate stalking charge [under § 2261A] is no longer categorically a crime of violence" because "the statute can also be violated by other means" that do not involve physical force. Id. Based on this concession, the government requested that the court "vacate the conviction on Count Five and issue an Amended Judgment." Id. at 12. Although the government also noted that it had discovered what "appears to be an Apprendi error in Count Four," the government argued that the court "should decline to recognize [that] error." Id. at 4; see also Apprendi v. New Jersey, 530 U.S. 466, 476 (2000) (holding that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt") (internal quotation marks and citation omitted).

Plunkett subsequently filed a motion for appointment of counsel and motions for extension of time to file a reply. On May 12, 2022, the court granted those motions and appointed the Federal Public Defender to represent Plunkett pursuant to 18 U.S.C. § 3006(A)(2). ECF No. 1008. The court gave appointed counsel the opportunity to file a supplemental reply to the government's response to Plunkett's § 2255 motion. Id. The court also denied any remaining pro se motions without prejudice to refiling by counsel. Id.

Plunkett's appointed counsel filed a supplemental reply brief on November 2, 2022. ECF No. 1031. Relying on the government's concession, counsel argued that Plunkett's conviction on Count Five must be vacated. See id. at 2–3 ("As conceded by the government, because the predicate offense Mr. Plunkett was convicted of is not categorically a 'crime of violence,' the 924(c) conviction in Count Five must be vacated."). Counsel also urged the court

8

to correct the Apprendi error noted by the government with respect to Count Four, even though it had not been raised by Plunkett. See id. at 5 ("As the jury found no aggravator for Count Four, the appropriate sentence is five years . . . . Mr. Plunkett respectfully asks this Court to vacate his § 924(c) conviction, and to re-sentence him to five years for his Count Four conviction under § 2261[A].").

On October 30, 2023, the court entered an order directing the parties to file supplemental briefs addressing Plunkett's Davis claim. ECF No. 1061. The court noted that the government's concession was based on the current version of § 2261A and that the version in effect at the time of Plunkett's conviction did not include certain language on which the government relied in conceding that Plunkett was entitled to relief. Id. at 2–3. Because a court is not permitted to vacate a conviction based on the government's concession alone, and since neither side had addressed the statutory language in effect at the time of Plunkett's conviction, the court found it appropriate to require supplemental briefing. Id. at 4–5.

In its supplemental response, the government "withdraws its concession that Count Five is infirm." ECF No. 1064 at 3. Based on the version of § 2261A in effect at the time Plunkett was charged, the government argues that the offense of interstate stalking qualifies as a crime of violence under the force clause of § 924(c)(3) and, thus, that Plunkett is not entitled to relief under Davis. Plunkett, for his part, disagrees, arguing for various reasons that "[i]nterstate stalking was never categorically a crime of violence under the force clause." ECF No. 1065 at 2.

The court has considered all of the briefing submitted with respect to the pending § 2255 motion, and the motion is ripe for decision.

9

## II.   Discussion

Section 2255 permits a prisoner serving a federal sentence to move to "vacate, set aside

or correct the sentence." 28 U.S.C. § 2255(a). The statute sets forth four grounds upon which

a federal prisoner may base a claim for relief: (1) "the sentence was imposed in violation of

the Constitution or laws of the United States"; (2) "the court was without jurisdiction to

impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law";

or (4) the conviction or sentence is "otherwise subject to collateral attack." Id.

A federal prisoner seeking to file a second or successive § 2255 motion must first obtain

authorization from the appropriate court of appeals. 28 U.S.C. § 2244(b)(3). Pursuant to

§ 2255(h), a successive § 2255 motion "must be certified as provided in section 2244 by a panel

of the appropriate court of appeals to contain" either "(1) newly discovered evidence that, if

proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear

and convincing evidence that no reasonable factfinder would have found the movant guilty of

the offense," or (2) "a new rule of constitutional law, made retroactive to cases on collateral

review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

When deciding whether to grant prefiling authorization, the court of appeals inspects

"the entire § 2255 motion . . . 'to determine whether it contains any claim that satisfies' the

§ 2255(h) standard." United States v. MacDonald, 641 F.3d 596, 615 (4th Cir. 2011) (quoting

United States v. Winestock, 340 F.3d 200, 205 (4th Cir. 2003)). "If any one claim satisfies such

standard, [the court of appeals will] 'authorize the prisoner to file the entire application in the

district court, even if some of the claims in the application do not satisfy the applicable

standard[].'" Id. (second alteration in original) (quoting Winestock, 340 F.3d at 205). The

district court then has "the responsibility . . . to more closely scrutinize 'each claim and dismiss those that are barred under [§ 2255(h)].'" Id. (alteration in original) (quoting Winestock, 340 F.3d at 205).

### A.    Claim under Davis

The court will begin by addressing the claim for which Plunkett obtained authorization to file a successive § 2255 motion—his claim that his conviction under 18 U.S.C. § 924(j) is invalid in light of Davis. Upon review of the record and applicable law, the court concludes that Plunkett is entitled to relief on this claim.

"The relevant portions of § 924 provide that 'any person, who, during and in relation to any crime of violence' 'causes the death of a person through the use of a firearm, shall—if the killing is a murder . . . be punished by death or by imprisonment.'" United States v. Runyon, 994 F.3d 192, 199 (4th Cir. 2020) (emphasis in original) (quoting 18 U.S.C. § 924(c)(1), (j)(1)). A "crime of violence" is defined as an "offense that is a felony" and that "(A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). Subsection (A) of § 924(c)(3) is known as the force (or elements) clause, and subjection (B) is known as the residual clause. Runyon, 994 F.3d at 199 & n.*.

In Davis, the Supreme Court invalidated the residual clause of § 924(c)(3) as unconstitutionally vague. 588 U.S. at 470. The Fourth Circuit has concluded that "Davis announced a new substantive rule of constitutional law that has been made retroactive to cases on collateral review by the Supreme Court and that was previously unavailable," thereby

satisfying the requirements of 28 U.S.C. § 2255(h)(2). In re Thomas, 988 F.3d 783, 790 (4th Cir. 2021). Consequently, when a Davis claim is properly raised on collateral review, a defendant's conviction under 18 U.S.C. § 924(c) or (j) remains valid only if the predicate offense qualifies as a crime of violence under the force clause of § 924(c)(3). Compare United States v. Draven, 77 F.4th 307, 320 (4th Cir. 2023) (concluding that a predicate offense remained a crime of violence under the force clause and therefore affirming the denial of the petitioner's motion to vacate his § 924(j) conviction), with United States v. Davis, 53 F.4th 168, 172 (4th Cir. 2022) (reversing the denial of a § 2255 motion based on the conclusion that the federal arson statute which served as the predicate crime for the defendant's § 924(c) conviction is not categorically a crime of violence under the force clause).

"To determine whether an offense qualifies as a 'crime of violence' under the force clause, [courts] use the categorical approach." United States v. Thomas, 87 F.4th 267, 272 (4th Cir. 2023); see also Davis, 53 F.4th at 171 ("We employ the categorical approach to determine whether an offense is a crime of violence under the force clause.") (citing United States v. Taylor, 979 F.3d 203, 207 (4th Cir. 2020)). The categorical approach "focuses on the elements of the prior offense rather than the conduct underlying the conviction." Taylor, 979 F.3d at 207 (internal quotation marks and citation omitted). In applying the categorical approach and determining whether an offense constitutes a crime of violence, the court "must consider only what the government must always prove as elements of the offense." United States v. Robinson, 92 F.4th 531, 536 (4th Cir. 2024) (citing United States v. Taylor, 596 U.S. 845, 857–58 (2022)). Specifically, the court must determine whether the government must prove, as an element of the offense, "the use, attempted use, or threatened use of physical force against the

person or property of another." 18 U.S.C. § 924(c)(3)(A); <u>see also</u> <u>Taylor</u>, 596 U.S. at 851 (explaining that attempted Hobbs Act robbery is not a crime of violence under the force clause since a hypothetical defendant could be convicted of attempting to commit such crime without using or threatening to use physical force); <u>Harris v. United States</u>, 19 F.4th 863, 869 (6th Cir. 2021) (explaining that the relevant question under the categorical approach is "whether every defendant convicted of that . . . felony <u>must have</u> used, attempted to use, or threatened to use physical force against the person of another <u>in order to have been convicted</u>, not whether the particular defendant <u>actually</u> used, attempted to use or threatened to use physical force against the person of another <u>in that particular case</u>") (emphasis in original) (citations omitted).

As noted above, Plunkett's § 924(j) charge was set forth in Count Five of the superseding indictment, and the indictment identified the crime of violence underlying the § 924(j) charge as "interstate stalking, in violation of Title 18, United States Code, Section 2261A." ECF No. 132 at 4. Thus, the court must determine whether the predicate offense of interstate stalking qualifies as a crime of violence under the force clause of § 924(c)(3)—that is, whether the offense "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 28 U.S.C. § 924(c)(3)(A).

At the time Plunkett was charged and convicted by a jury, the interstate stalking statute, 18 U.S.C. § 2261A,[2] read as follows:

Whoever--

---

[2] The interstate stalking statute was enacted as part of the Violence Against Women Act. <u>United States v. Hayes</u>, 135 F.3d 133, 136 (2d Cir. 1998). The Act also criminalized acts of interstate domestic violence and interstate violation of a protective order. <u>See</u> U.S.C. §§ 2261, 2262.

(1) travels in interstate or foreign commerce or within the special maritime and territorial jurisdiction of the United States, or enters or leaves Indian country, with the intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel places that person in reasonable fear of the death of, or serious bodily injury to, that person, a member of the immediate family (as defined in section 115[3]) of that person, or the spouse or intimate partner of that person; or

(2) with the intent--

(A) to kill or injure a person in another State or tribal jurisdiction or within the special maritime and territorial jurisdiction of the United States; or

(B) to place a person in another State or tribal jurisdiction, or within the special maritime and territorial jurisdiction of the United States, in reasonable fear of the death of, or serious bodily injury to—

(i) that person;

(ii) a member of the immediate family (as defined in section 115) of that person; or

(iii) a spouse or intimate partner of that person,

uses the mail or any facility of interstate or foreign commerce to engage in a course of conduct that places that person in reasonable fear of the death of, or serious bodily injury to, any of the persons described in clauses (i) through (iii),

shall be punished as provided in section 2261(b).

18 U.S.C. § 2261A (effective Oct. 28, 2020, to Jan. 4, 2006).[4]

---

[3] A person's "immediate family member" includes "his spouse, parent, brother, or sister, child or person to whom he stands in loco parentis" or "any other person living in his household and related to him by blood or marriage." 18 U.S.C. § 115(c)(2).

[4] Section 2261A was "amended substantially" in 2006, and the amendments "significantly broadened the scope of the law." United States v. Cassidy, 814 F. Supp. 2d 574, 581 (D. Md. 2011). Among other changes, the statute was "broadened so as to bring within the scope of the law a course of conduct that merely 'causes

In its supplemental response to Plunkett's motion, the government argues that "[t]here are no means of violating the 2005 version of § 2261A that do not involve the intentional use, attempted use, or threatened use of physical force." ECF No. 1064 at 6. Although the government acknowledges that "[h]arassment alone" does not necessarily involve the use, attempted use, or threatened use of force, the government contends that a defendant charged with violating the applicable statute "must both intend to kill, injure, harass, or intimidate the victim and also commit an act that results in an objectively reasonable fear of death or serious bodily injury." Id. Relying on Fourth Circuit decisions holding that completed Hobbs Act robbery remains a crime of violence after Davis, the government argues that putting someone in "'fear of injury' . . . 'necessarily involves the threat to use physical force' and therefore comes within the meaning of 'crime of violence' in § 924(c)(3)(A)." Id. (quoting United States v. Ivey, 60 F.4th 99, 117 (4th Cir. 2023)); see also Ivey, 60 F.4th at 116 (noting that "Hobbs Act robbery is defined as 'the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property'") (quoting 18 U.S.C. § 1951(b)(1)).

Although the government's argument seems persuasive on its face, Plunkett's supplemental reply points out at least one fundamental problem with the government's position. The force clause of § 924(c) reaches only felony offenses that have "as an element

---

substantial emotional distress.'" Id.; see also 18 U.S.C. § 2261A(1) (eff. Dec. 22, 2020) (making it unlawful to travel in interstate commerce "with the intent to . . . harass another person, and in the course of, or as a result of, such travel or presence engage[] in conduct that . . . causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to [that person or that person's immediate family member, spouse, or intimate partner]").

the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A) (emphasis added). "By its terms, the force clause does not reach the use of physical force against property solely owned by the defendant." Davis, 53 F.4th at 171 (concluding that a defendant's federal arson conviction could not serve as the predicate crime of violence for his § 924(c) conviction since the version of the statute under which he was convicted "criminalized the arson of property fully owned by the defendant, and not just the of the property 'of another'"). Nor does the force clause apply in situations in which defendants solely use or threaten to use physical force against themselves. See United States v. Kepler, 74 F.4th 1292, 1305 & n.15 (10th Cir. 2023) (explaining that "[t]he words 'person of another' . . . require that the perpetrator use physical force on a person other than himself" and, thus, that "'the person . . . of another' in § 924(c)(3)(A) means a person 'other than' the perpetrator of the crime"); see also Borden v. United States, 593 U.S. 420, 458 n.6 (2021) (Kavanaugh, J., dissenting) (noting that the words "of another" in the identically-worded force clause of the Armed Career Criminal Act (ACCA) "exclude crimes involving harm to oneself, as opposed to others"); Portee v. United States, 941 F.3d 263, 271–73 (7th Cir. 2019) (concluding that a defendant's conviction for felony intimidation under state law did not qualify as a crime of violence under the force clause of the ACCA since the plain language of the intimidation statute encompassed situations involving self-harm or threats of self-harm).

Here, as was true in Portee, the court has no difficulty envisioning situations that could satisfy all of the elements of interstate stalking but not necessarily involve the use, attempted use, or threatened use of physical force against the person of another. For instance, a woman's

estranged husband could travel in interstate commerce with the intent to harass her and, in

the course of doing so, threaten to shoot himself if she refused to meet with him. Similarly, a

man's daughter could travel in interstate commerce with the intent to harass him and, in the

course of doing so, threaten to take an overdose of pills if he did not agree to do something

that she demanded of him. Both situations would satisfy the elements of § 2261A(1) since they

involve (1) travel in interstate commerce, (2) the intent to harass another person, and (3) the

effect of placing that person in reasonable fear of fatal or serious bodily injury to a spouse or

immediate family member. However, these hypothetical situations would not satisfy the force

clause of § 924(c)(3) since they involve threats of self-harm by the perpetrator of the

harassment rather than the "threatened use of physical force against the person or property of

another."[5] 18 U.S.C. § 924(c)(3)(A) (emphasis added).

Because a person's immediate family member or intimate partner could commit

interstate stalking in violation of § 2261A by, among other elements, threatening to physically

harm themselves, rather than another person, the court concludes that the offense is not

categorically a crime of violence under the force clause of § 924(c)(3). And since the residual

clause of § 924(c)(3) is no longer valid as a result of the Supreme Court's decision in Davis,

interstate stalking cannot serve as the predicate crime for the § 924(j) offense charged in Count

---

[5] As defense counsel notes in Plunkett's supplemental reply, it is unfortunately not uncommon "for a person to manipulate a family member or former intimate partner by telling them that they will harm themselves. This is a part of their harassment." ECF No. 1065 at 3; see also, e.g., United States v. Reddick, 203 F.3d 767, 768 (10th Cir. 2000) (affirming a defendant's conviction for possession of a firearm by a person under a domestic violation protection order where the defendant approached his estranged wife at work three times, told her that he had a gun, and threatened to kill himself); Hogue v. Hogue, 224 Cal. Rptr. 3d 651, 656 (Cal. Ct. App. 2017) (noting that a man's "act of purposefully sending a video of a mock suicide to [his estranged wife] in California . . . is indisputably conduct that would disturb [her] peace of mind . . . and be the basis for granting a restraining order").

Five. Consequently, Plunkett's § 2255 motion will be granted with respect to his <u>Davis</u> claim, and the court will vacate his conviction as to Count Five under § 924(j).[6] <u>See</u> <u>United States v. Graham</u>, 67 F.4th 218, 221 (4th Cir. 2023) ("Federal law allows a sentencing court to vacate a Section 924(c) conviction that was not supported by a valid predicate offense.") (citing 28 U.S.C. § 2255(a)).

### B.    Other Claims Asserted by Plunkett

The Fourth Circuit granted Plunkett pre-filing authorization to file a successive § 2255 motion addressing the validity of his § 924(j) conviction. Although Plunkett's § 2255 motion includes three additional grounds for relief, the Fourth Circuit concluded that Plunkett had not made the requisite showing under § 2255(h) as to the remaining claims. Consequently, the Fourth Circuit denied Plunkett's motion for authorization to file a successive § 2255 motion "as to all other claims." ECF No. 966 at 2.

The Fourth Circuit has explained that its review under § 2255(h) is "tentative" in the sense that "the district court must dismiss the motion that [the Fourth Circuit has] allowed the applicant to file, without reaching the merits of the motion, if the court finds that the movant has not satisfied the requirements for the filing of such a motion." <u>McLeod v. Peguese</u>, 337 F. App'x 316, 324 (4th Cir. 2009) (quoting <u>Bennett v. United States</u>, 119 F.3d 468, 470 (7th Cir. 1997)). Thus, when a movant receives authorization to file a successive § 2255 motion, "[i]t is then the responsibility of the district court to more closely scrutinize each claim and dismiss

---

[6] In light of the court's decision, the court finds it unnecessary to address Plunkett's alternative arguments in support of the <u>Davis</u> claim.

those that are barred under § 2225(h)." MacDonald, 641 F.3d at 615 (internal quotation marks and brackets omitted).

In addition to the Davis claim addressed above, Plunkett's successive § 2255 motion asserts claims of "fraud upon the court," "prosecutorial misconduct," "fraudulent alteration of the trial record," and "ineffective assistance of counsel (pre-trial) and (conduct during trial) as it pertains to codefendant [Taylor]." ECF No. 967 at 3–5. Plunkett asserted similar, if not identical, claims in a previous motion that was dismissed as successive under § 2255(h). Having reviewed the record, the court concludes that the other claims raised in the pending motion are not based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," and that Plunkett has not presented any newly discovered evidence that "would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found [him] guilty." 28 U.S.C. § 2255(h). Consequently, Plunkett's other claims are barred under § 2255(h).

## C.   Apprendi Error Noted by the Government

Plunkett was sentenced to life imprisonment for the interstate stalking offense charged in Count Four of the superseding indictment. The applicable penalty provision provides that a person who violates 18 U.S.C. § 2261A shall be imprisoned "for life or any term of years, if death of the victim results." 18 U.S.C. § 2261(b)(1). If the victim suffers permanent disfigurement or a life-threatening bodily injury, the maximum term of imprisonment is 20 years, id. § 2261(b)(2), and the maximum term of imprisonment is 10 years "if serious bodily injury to the victim results or if the offender uses a dangerous weapon during the offense," id.

§ 2261(b)(3). Absent one of those aggravating circumstances, the maximum term of imprisonment is 5 years. Id. § 2261(b)(5).

Because each of the aggravating factors listed in § 2261(b) increases the maximum penalty, it "must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Apprendi, 530 U.S. at 476. Although other counts of the superseding indictment alleged that Plunkett, Bodkins, and Taylor engaged in conduct that "resulted in the death of Tyree Wimbush," Count Four of the superseding indictment did not include that language. See ECF No. 132 at 1–5. Thus, the government has acknowledged that there "appears [to be] an Apprendi error as to that count." ECF No. 997 at 5.

Although Apprendi was decided before Plunkett was indicted, he did not raise an Apprendi-based challenge on direct appeal, in his first § 2255 motion, or in the pending § 2255 motion. Even assuming that the Apprendi error is properly raised at this stage of the proceedings, the court concludes that the error was harmless beyond a reasonable doubt. Accordingly, the court declines to correct the error.

Apprendi errors are reviewed under the harmless error standard applied in Neder v. United States, 527 U.S. 1 (1999). See United States v. Legins, 34 F.4th 304, 323–35 (4th Cir. 2022). This standard requires that "the government prove, beyond a reasonable doubt, that the jury would have convicted—also beyond a reasonable doubt—had the aggravating factor been submitted to them." Legins, 34 F.4th at 324. In Neder, the Supreme Court explained that if "a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the [error] is properly found to be harmless." 527 U.S. at 17.

Conversely, an error is not harmless if "the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding." Neder, 527 U.S. at 19.

Based on the evidence presented at trial and the jury's verdict with respect to other counts, the court concludes that the Apprendi error was harmless. There is overwhelming evidence that the jury would have found that the "death of the victim"—Tyree Wimbush— resulted from the conduct charged in Count Four of the superseding indictment.[7] 18 U.S.C. § 2262(b)(1). The government's evidence established that Plunkett hired Bodkins and Taylor to kill Wimbush, that "Bodkins and Taylor drove from Johnson, City, Tennessee, to Danville, Virginia, to kill Wimbush" and that "Bodkins shot Wimbush three times, killing him with a wound to the aortic artery." Bodkins, 274 F. App'x at 296. The jury found beyond a reasonable doubt, with respect to Counts One and Two, that Plunkett caused and conspired to cause Bodkins and Taylor to travel in interstate commerce with the intent to commit murder for pecuniary gain, "which resulted in the death of Tyree Wimbush." ECF No. 561 at 1–2. Additionally, in Count Five, the jury found Plunkett "guilty beyond a reasonable doubt of aiding and abetting another in knowingly carrying and using a firearm during and in relation

---

[7] Count Four charged that Bodkins, Taylor, and Plunkett "travel[ed] in interstate commerce with the intent to kill, injure, harass, and intimidate another person, to wit Tyree Wimbush, and did aid and abet the same, and as a result of such travel placed Tyree Wimbush in reasonable fear of death or serious[] bodily injury." ECF No. 132 at 4. The jury specifically found Plunkett "guilty beyond a reasonable doubt of aiding and abetting another in traveling in interstate commerce with the intent to kill, injure, harass, and intimidate Tyree Wimbush, and as a result of such travel placing Tyree Wimbush in reasonable fear of death or serious bodily injury." ECF No. 561. On direct appeal, the Fourth Circuit found that substantial evidence supported Plunkett's conviction on Count Four and all other counts. Bodkins, 274 F. App'x at 297–99.

to a crime of violence, that is, interstate stalking, and in the course of this violation, with malice aforethought, aiding and abetting the unlawful killing of Tyree Wimbush by willful, deliberate, and malicious shooting, with premeditation." Id. at 3. The jury could not have returned its verdict on Count Five without finding that death actually resulted from the actions that Plunkett aided and abetted. Although the court has concluded that Plunkett's conviction on Count Five is no longer valid following Davis, the jury's verdict demonstrates that it would have found that death resulted from Plunkett's offense conduct had the enhancement been charged in Count Four and presented to the jury for consideration. See United States v. Pena, 58 F.4th 613, 622–23 (2d Cir. 2022) (concluding that the failure to instruct on an "if death results" enhancement was harmless since there was "overwhelming evidence that the jury would have found that death was the result of the conduct alleged," including the jury's guilty verdict on related § 924(j) counts that were no longer valid following Davis); United States v. Ventura, 742 F. App'x 575, 580 (2d Cir. 2018) (reasoning that a similar Apprendi error was harmless because "the evidence was overwhelming that the [victims'] deaths did result from Ventura's murder for hire conduct" and observing that "the jury convicted Ventura of causing the death . . . of those two victims when it convicted him of Counts Four and Five," which charged him with use of a firearm to commit murder in violation of § 924(j)).

For these reasons, the court concludes that the Apprendi error noted by the government was harmless. Accordingly, Plunkett is not entitled to relief with respect to Count Four, and the court declines to correct the error.

## D.    Appropriate Remedy

If the court determines that a prisoner's conviction or sentence must be vacated under § 2255, the court "'shall' grant the prisoner an 'appropriate' remedy." United States v. Hadden, 475 F.3d 652, 661 (4th Cir. 2007). Four possible remedies are listed in § 2255: (1) "discharge the prisoner," (2) "grant [the prisoner] a new trial," (3) "resentence [the prisoner]," or (4) "correct the [prisoner's] sentence." 28 U.S.C. § 2255(b). "Accordingly, the end result of a successful § 2255 proceeding must be the vacatur of the prisoner's unlawful sentence (and perhaps one or more of his convictions) and one of the following: (1) the prisoner's release, (2) the grant of a future new trial to the prisoner, (3) or a new sentence, be it imposed by (a) a resentencing or (b) a corrected sentence." Hadden, 475 F.3d at 661.

Given the particular circumstances of this case, including the fact that two undisturbed counts of conviction carry a mandatory minimum penalty of life imprisonment, the court agrees with the government that a resentencing hearing is unnecessary and that the appropriate remedy is to vacate Plunkett's conviction on Count Five and issue an amended judgment. See id. at 669 (explaining that the "text of § 2255 clearly affords district courts the authority to 'correct' a prisoner's unlawful sentence without conducting a formal 'resentenc[ing]' hearing" and, thus, that the district court did not err "by striking the § 924(c) sentence and reentering the remaining sentence"); Pena, 58 F.4th at 623 (concluding that a de novo resentencing is not required when a conviction is vacated under § 2255 and that the district court did not abuse its discretion in declining to resentence the defendant de novo after vacating his § 924(j) convictions in light of Davis). The amended judgment will omit the vacated § 924(j) conviction (Count Five); reflect concurrent sentences of life imprisonment on Counts One, Two, and

Four, and a concurrent sentence of 60 months' imprisonment on Count Three; and reduce the special assessment to $400.00.

## V.    Conclusion

For the reasons stated, the court **GRANTS IN PART AND DENIES IN PART** Plunkett's motion to vacate under § 2255. Because Plunkett has not made the requisite showing, the court **DENIES** a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000). An appropriate order will be entered.

Entered: September 12, 2024

Michael F. Urbanski
Chief United States District Judge